894 A.2d 100 (2006)
384 N.J. Super. 182
Mary C. MAHER, Plaintiff-Appellant,
v.
COUNTY OF MERCER, Defendant-Respondent, and
Aramark, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 2005.
Decided March 27, 2006.
*101 Kevin M. Shanahan, Pennington, argued the cause for appellant.
Sarah G. Crowley argued the cause for respondent (Arthur R. Sypek, Jr., Mercer County Counsel, attorney; Ms. Crowley, Deputy County Counsel and Paula Sollami-Covello, Assistant County Counsel, on the brief).
Before Judges KESTIN,[1] HOENS and R.B. COLEMAN.
The opinion of the court was delivered by
HOENS, J.A.D.
Plaintiff Mary Maher appeals from the November 19, 2004 order of the Law Division denying her motion for a declaration that her Tort Claims Act notice was timely filed or, in the alternative, granting her leave to file a late Tort Claims Act notice. We reverse and remand.
The following facts, which we have derived from the record, are relevant to the issues raised on appeal. From August 2002 until November 2003, plaintiff was employed by defendant Aramark as a cook. Throughout that time, she worked at the Mercer County Corrections Center. In July or August 2003, plaintiff began to experience breathing difficulties. Her personal physician, Dr. Schmidt, diagnosed her as suffering from asthma. Her condition continued to deteriorate and she became "increasingly weak, dehydrated and short of breath."
On November 1, 2003, plaintiff collapsed and was taken to the Hunterdon Medical Center, where she was admitted and remained for treatment until her release on November 28, 2003. According to the discharge note, when she was admitted, it was believed that she was suffering from "bilateral pneumonia and acute respiratory failure, dehydration, diabetes, [and] acid reflux." The discharge note also reveals that during that hospitalization, plaintiff developed septic shock and that cultures revealed that she had "Methicillin resistant staph aureus pneumonia and bacteremia." Plaintiff was hospitalized for further treatment from December 13, 2003 until January 1, 2004, from January 30, 2004 until February 6, 2004 and in April 2004. Plaintiff asserts, and there is no contrary evidence in the record, that she suffers from severe memory deficits, has little recollection of her hospitalizations and continues to experience significant effects from her illness the specifics of which do not bear upon our analysis.
Plaintiff had retained her attorney in 2001 to represent her in unrelated litigation. That matter was proceeding through discovery when plaintiff began to be ill. Counsel first became aware that plaintiff was ill in November 2003 while she was in the hospital. At that time, plaintiff's daughter telephoned him to explain that plaintiff's condition was so severe that she might not survive. In the course of that conversation, when counsel asked about the cause of plaintiff's illness, her daughter told him that it was not known.
According to counsel for plaintiff, the question about the cause of her illness first arose during the course of one of plaintiff's hospitalizations. Although it is not clear *102 precisely when it happened, at some point while plaintiff was in the hospital, her treating doctor commented to her daughter that he had noticed a burn on plaintiff's forearm when she was first admitted. He thought that the burn might have been "the source" of the staph infection. On May 14, 2004, Dr. David Cohn, the pulmonary specialist who had been principally in charge of plaintiff's hospital care, wrote a letter in which he described the staph infection as "community-acquired." He also referred to the burn she had on her forearm when she was admitted. He described it as a burn she had gotten at the Corrections Center and opined that it "may have been the source of the Staph aureus infection."
Approximately a week after counsel[2] learned of the doctor's opinion, he was admitted to a hospital with a diagnosis of cancer. The attorney underwent surgery and follow-up treatment thereafter until he was released by his physician to return to work on August 1, 2004. Within ten days of his return to his practice, he filed the Tort Claims Act notice with Mercer County. When the County rejected that notice as untimely, plaintiff's counsel filed his motion seeking an order deeming the notice to be timely or seeking leave to file it out of time. The judge denied the motion, concluding that because the burn was known to plaintiff during the summer of 2003, the notice was untimely and the time for seeking an extension had also expired.
We need only briefly set forth the relevant aspects of the Tort Claims Act, N.J.S.A. 59:1-1 to:12-3. Central to our consideration of the issues raised on appeal are the provisions included in the Act respecting notice. Although the mechanics of filing a claim under the Act are not germane to the issues on appeal, all claims brought pursuant to the Act shall be set forth in a notice which must be filed "not later than the ninetieth day after the accrual of the cause of action." N.J.S.A. 59:8-8. In addition, however, a potential claimant may also seek leave to file a notice after the expiration of the ninety-day window by motion. N.J.S.A. 59:8-9. The court may grant leave for the late notice if the motion is filed within one year of the date of the accrual of the claim, "provided that the public entity or public employee has not been substantially prejudiced thereby." Ibid. A motion for leave to file a late notice, moreover, must be supported by a demonstration of "extraordinary circumstances for [the] failure to file notice of claim within the period of time prescribed...." Ibid.
In considering the meaning of this statute, our Supreme Court has commented that the term "accrual" is "not define[d]. . . in any significant way" in the Act. Beauchamp v. Amedio, 164 N.J. 111, 116, 751 A.2d 1047 (2000)(citing and quoting N.J.S.A. 59:8-1). In explaining the concept of accrual of claims in general, the Court has held that in general "a cause of action accrues when any wrongful act or omission resulting in any injury, however slight, for which the law provides a remedy, occurs." Id. at 116-17, 751 A.2d 1047 (citations omitted). That being the case, it is usually true that the date of an accident or a negligent act is also the date on which the associated cause of action accrues. Id. at 117, 751 A.2d 1047 (citations omitted).
Our Supreme Court has also held, however, that the discovery rule applies to claims brought pursuant to the Act. Ibid. *103 In particular, the Court stated: "[t]he only exception to that well established notion of accrual is the case where the victim either is unaware that he has been injured or, although aware of an injury, does not know that a third party is responsible." Ibid. (citing Lamb v. Global Landfill Reclaiming, 111 N.J. 134, 144-45, 543 A.2d 443 (1988); Ayers v. Jackson Twp., 106 N.J. 557, 582, 525 A.2d 287 (1987); Lopez v. Swyer, 62 N.J. 267, 274, 300 A.2d 563 (1973)).
In Beauchamp, the Court explained the appropriate method for analysis of issues like the ones raised in this appeal. Beauchamp, supra, 164 N.J. at 118-19, 751 A.2d 1047. We need not repeat that guidance here. Rather, we begin, as the Court instructed, with the question of when the claim accrued, a part of which is an evaluation of the impact of the discovery rule. Only then can we correctly determine whether either the notice or the motion for leave to file a late notice was timely.
In applying this guidance to the issues raised on appeal, we note that the Law Division judge reasoned that the injury that plaintiff suffered was the burn on her arm. In his view, because that injury was known to her during the summer of 2003, her cause of action accrued then. Therefore, whether tested by the date on which she filed her notice or the date when she sought leave to file her claim out of time, the claim was time-barred.
There is no doubt about the fact that plaintiff suffered a burn on her arm during the summer of 2003. Although the record is unclear, there is little doubt about the fact that she knew she had been burned at the time it happened. Critical to the discovery rule analysis, however, is the fact that the burn is not the injury and it is not the basis for her claim. Rather, the injury is the virulent infection that entered her body and for which she was treated during her several hospitalizations. For purposes of the discovery rule, until November 2003, which is when the staph infection was cultured and identified, she did not have the injury at all.
The record reflects that November 2003 is the earliest date when her physician could have alerted her daughter to the possibility that the burn was the route through which the infection had entered her body. That date, therefore, is the earliest date on which plaintiff can be charged with having both of the two pieces of information that are the key to the discovery rule, namely an injury and "facts suggesting that a third party may be responsible." Ayers, supra, 106 N.J. at 582, 525 A.2d 287.
In reaching this conclusion, we reject the suggestion that, for accrual purposes, plaintiff did not have the requisite information within the contemplation of the discovery rule until she received the May 14, 2004 opinion letter from her treating physician. See Baird v. American Medical Optics, 155 N.J. 54, 68, 713 A.2d 1019 (1998); Burd v. N.J. Tel. Co., 76 N.J. 284, 291-92, 386 A.2d 1310 (1978). Although it may be true that, in certain circumstances, the information critical to the discovery rule first appears in a written report, see Servis v. State, 211 N.J.Super. 509, 514, 511 A.2d 1299 (Law Div.1986), here the written report simply confirmed an opinion that had already been given orally.
The facts presented in this appeal are also unlike the circumstances that the Court confronted in Beauchamp itself. There, an injury sustained in a motor vehicle accident appeared at first to be insufficiently serious to withstand the threshold provisions of the Act. See Beauchamp, supra, 164 N.J. at 119-20, 751 A.2d 1047 (citing Montag v. Bergen Bluestone Co., 145 N.J.Super. 140, 149, 366 A.2d 1361 *104 (Law Div.1976)). The Court rejected the argument that an injury believed to be of insufficient severity should be analyzed as if the claim had not yet accrued. Id. at 121, 751 A.2d 1047. In doing so, the Court also rejected prospectively the contrary approach we had earlier suggested. Id. at 120, 751 A.2d 1047 (expressly disapproving Ohlweiler v. Twp. of Chatham, 290 N.J.Super. 399, 675 A.2d 1176 (App.Div.1996)).
We do not, however, understand the facts in this record to fall within the Ohlweiler analysis now rejected by the Court in Beauchamp. We reject the assertion that plaintiff's injury was the burn and that it was an injury which was incorrectly believed to lack sufficient severity to be actionable. Rather, we conclude that plaintiff's injury was the infection first detected in the hospital. We presume, for purposes of our analysis, that the conversation between Dr. Cohn and plaintiff's daughter also took place during the November 2003 hospitalization. The staph infection diagnosis alone would not be sufficient for discovery rule purposes, because it would merely be the identification of the injury. Rather, the conversation about the cause was necessary for purposes of accrual because it first gave plaintiff, or her daughter, as her agent, information that the county might be responsible. See Ayers, supra, 106 N.J. at 582, 525 A.2d 287; Lopez, supra, 62 N.J. at 274, 300 A.2d 563. We can find no ground on which to assume that the conversation took place at a later time although it is equally likely that it occurred later. Seen in that light, the facts in this record fall within the realm of the circumstances that the Court referred to in Beauchamp as ones in which the plaintiff "does not know that he or she has been injured at all," Beauchamp, supra, 164 N.J. at 122, 751 A.2d 1047, prior to the time when the doctor connected the infection with the burn.
Having concluded that the claim accrued in November 2003, plaintiff's notice filed in August 2004 fell outside the ninety-day window and was untimely. N.J.S.A. 59:8-8. Her October 2004 motion, however, was filed within the one-year period for an extension that is permitted by the statute. N.J.S.A. 59:8-9.
Our review of the record compels us to point out that the circumstances that led to the delay in filing the notice and the motion were truly extraordinary.[3] Plaintiff's condition was so severe that during her first hospitalization she was in an induced coma. According to her daughter, she was not even expected to survive. After that time, she continued to be in extremely poor health and she was repeatedly readmitted to the hospital for further treatment.
There is little to guide us in interpreting the meaning of extraordinary circumstances. See Beauchamp, supra, 164 N.J. at 118, 751 A.2d 1047; Lowe v. Zarghami, 158 N.J. 606, 626, 731 A.2d 14 (1999); Zois v. New Jersey Sports & Exposition Auth., 286 N.J.Super. 670, 675, 670 A.2d 92 (App. Div.1996). Indeed, this phrase, added when the Act was amended in 1994, is still imprecisely understood.[4] Nevertheless, we regard plaintiff's circumstances to fall *105 within the meaning of the term "extraordinary" so as to afford her relief.
At the same time, there is no evidence in this record of any prejudice to the county occasioned by plaintiff's delay in filing her claim or in seeking leave to deem her August 2004 notice to be timely. We therefore reverse the order of the Law Division denying plaintiff's motion and we remand this matter for further proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] Judge Kestin did not participate in oral argument. However, with the consent of counsel he has joined in this opinion.

R. 2:13-2(b).
[2] Dr. Cohn's letter was not sent to her personal injury counsel, who is also the attorney who represents her in this appeal. For reasons not explained in the record, the letter was sent to a different lawyer and it was forwarded to her personal injury lawyer on May 20, 2004.
[3] Although we are aware that plaintiff's attorney's own serious health issues independently might be seen as extraordinary, because that diagnosis and treatment did not take place during the ninety-day window following accrual, we must consider them to be irrelevant for the purposes of the statutory test. See N.J.S.A. 59:8-9.
[4] The same phrase, used in other contexts, has been applied on a case-by-case basis. See, e.g., Tischler v. Watts, 177 N.J. 243, 827 A.2d 1036 (2003)(concluding that attorney's severe illness met standard of extraordinary circumstances for purposes of affidavit of merit statute compliance).