6 A.3d 484 (2010)
416 N.J. Super. 525
Juan S. MENDEZ, Plaintiff-Respondent,
v.
SOUTH JERSEY TRANSPORTATION AUTHORITY, Defendant, and
City of Brigantine, Brigantine Rescue Squad, and Greg Goff, Defendants-Appellants.
Colleen Felix, as Guardian Ad Litem for Colleen Curran, Plaintiff-Respondent,
v.
Juan S. Mendez, South Jersey Transportation Authority, Defendants, and
Greg Goff, Defendant-Appellant.
Docket Nos. A-3403-09T2, A-3409-09T2
Superior Court of New Jersey, Appellate Division.
Argued October 14, 2010.
Decided November 4, 2010.
*485 Erin R. Thompson argued the cause for appellants City of Brigantine, Brigantine Rescue Squad, and Greg Goff in A-3403-09T2 & appellants City of Brigantine and Greg Goff in A-3409-09T2 (Powell, Birchmeier & Powell, attorneys; Donald A. Powell, Tuckahoe, on the brief).
Robert S. Sandman, Atlantic City, argued the cause for respondent Juan S. Mendez in A-3403-09T2 (Hankin, Sandman & Palladino, attorneys; Mr. Sandman, on the brief).
*486 Michael A. Gibson, Linwood, argued the cause for respondent Colleen Felix in A-3409-09T2 (D'Amato Law Firm, attorneys for respondent; Mr. Gibson, on the brief).
Before Judges AXELRAD, R.B. COLEMAN[1] and J.N. HARRIS.
The opinion of the court was delivered by
AXELRAD, P.J.A.D.
We consider whether "extraordinary circumstances" existed for the extension of the ninety-day Tort Claims deadline, N.J.S.A. 59:8-9, where plaintiffs' attorneys waited until they viewed the videotape depicting events relating to the motor vehicle accident, which they diligently requested, before filing the claims notices. The motion judge found such circumstances did exist. We agree.
These appeals were calendared back-to-back and are being consolidated for purposes of this opinion. Defendants, City of Brigantine, Brigantine Rescue Squad, and Greg Goff, appeal the March 2, 2010 order of the Law Division granting plaintiffs' motions to file late Tort Claims notices against them. N.J.S.A. 59:8-9. We affirm.
On March 3, 2009, Juan Mendez and his minor passenger Colleen Curran (referred to as "Felix," her guardian ad litem's name) were seriously injured when Mendez's vehicle struck a snow removal truck owned by the South Jersey Transportation Authority (SJTA) and parked on the left shoulder in the Atlantic City Expressway/Brigantine Connector Tunnel. Plaintiffs promptly filed Tort Claims notices against the SJTA, Atlantic City, Atlantic County, and the State of New Jersey based on the ownership of the vehicle and the location of the tunnel. N.J.S.A. 59:8-8.
On December 22 and 23, 2009, Felix and Mendez, respectively, filed Tort Claims notices against appellants, and shortly afterwards each filed suit for personal injuries. Plaintiffs then each filed a motion seeking: (1) a declaration that any cause of action against appellants accrued in mid-October 2009, when they received the videotape depicting the Brigantine ambulance operated by Goff attempting a lane change immediately prior to the accident, or, alternatively, (2) permission to file the late notices of claim against appellants. On February 19, 2010, the court issued identical letter opinions finding both plaintiffs had demonstrated "extraordinary circumstances" for the filing of their Tort Claims notices against appellants beyond the ninety-day deadline. N.J.S.A. 59:8-8; -9. The decision was memorialized in orders of March 2, 2010.[2] This appeal ensued.[3]
The record reflects that when the police arrived at the scene, both plaintiffs were unconscious, having suffered severe head trauma and requiring ambulance transport to a nearby trauma center. They spent considerable time in hospitals and rehabilitation facilities and they had *487 no recollection of events occurring immediately before or after the collision.
An investigation of the scene revealed that Mendez's vehicle was traveling southbound on the Atlantic City Expressway Connector and upon entrance to the tunnel he lost control of his vehicle, spun, ran off the road to the left, and struck the truck that was parked on the shoulder. The driver of the truck represented that he was standing outside his vehicle, speaking to the other snow plow drivers, and heard a crash but did not witness the collision. The initial police report also reflected that there were no witnesses to the accident.
A supplemental police report, designated a "change report," was prepared the following day by State Police Detective I. Richard Brunett. Pertinent to this appeal, the report discussed video footage recorded by two cameras located in the tunnel, which the detective described as follows:
The first camera depicts an Ambulance traveling southbound within the left lane and the Mendez Saturn traveling in the right lane approximately 2 car lengths behind the ambulance. The Mendez Saturn appears to be traveling at the same speed as the ambulance.
The 2nd camera depicts the three International Dump Trucks within the left shoulder and their occupants standing between the 2nd and 3rd International dump truck. The camera then captures the Ambulance passing the International dump trucks and the last International dump truck rocks from side to side from an apparent impact. The camera then depicts the occupants that were operating the three International dump trucks go to the rear of the last Dump truck to render aid.
The report continues:
The occupant's (sic) of the three parked maintenance trucks were standing between the second and third truck awaiting the arrival of a supervisor to determine if the Brigantine Connector needed another pass to clear the slush in the roadway. At this time, video evidence depicts an ambulance with its emergency lamps in operation traveling in the left lane with the Mendez Saturn approximately two car lengths behind the ambulance in the right lane.....
As per video evidence, the ambulance continued in the left lane and travels past the parked trucks. At this point in the video, the Mendez Saturn is not observed, but the last Atlantic City Expressway truck is impacted and slightly rocks from left to right. The video then depicts the Atlantic City Expressway driver's (sic) walking to the rear of the last truck to render aid.
Greg Goff, a Brigantine EMS, was identified as the driver of the ambulance and interviewed by Detective Brunett the day of the accident. According to the report, Goff advised he was transporting a cardiac patient from Brigantine to the Atlanticare Medical Center, with emergency lights activated. He stated that as he passed the three snow plows stopped in the left shoulder, "he heard a loud noise." He asked the paramedic treating the patient in the back to see what the noise was but the paramedic was unable to see anything because of the dirty windows in the ambulance. Goff further advised he attributed the loud noise to the snow plows being lowered and making contact with the roadway, and he continued to the medical center. He did not remember seeing any vehicles in the right lane as he entered and proceeded through the tunnel.
As a result of the accident, Mendez was charged with a motor vehicle offense. Mendez's attorney made three written requests of the municipal prosecutor for discovery: May 5, June 16, and June 29, 2009. *488 Following several adjournments by the municipal court as a result of the lack of discovery, on September 4, 2009, the judge advised Mendez's attorney she could submit an order compelling discovery, which she sent promptly. In the interim, the municipal prosecutor forwarded the written discovery materials and advised of the cost and procedure for obtaining videotapes. On September 10, 2009, Mendez's attorney requested copies of the two videotapes from the tunnel and enclosed the appropriate check. However, she was provided the wrong tape, and on October 5, 2009, she again requested the proper tapes. On October 19, 2009, when Mendez's attorney arrived at court, the municipal prosecutor gave her the correct videotapes.
Felix's attorney also made multiple requests for the videotapes. By letter of March 17, 2009, he requested that SJTA produce and preserve the specifically identified videotapes. The request was repeated to counsel for the SJTA by letters of May 7, May 20, and June 22, 2009, as well as telephone conversations during that time. Felix's attorney ultimately received the videotapes from Mendez's attorney on October 21, 2009.
Plaintiffs served Tort Claims notices on appellants in December 2009, and then filed their personal injury actions. In January, plaintiffs filed the subject motions.
The Law Division judge found extraordinary circumstances to allow the late filing. Noting that "N.J.S.A. 59:8-9 allows the court in its discretion to permit the filing of tort claims beyond the 90 day rule for extraordinary circumstances," the judge found compelling plaintiffs' injuries and their effect on plaintiffs' memories, and the delay in their obtaining of the videotapes. The judge reasoned that:
Plaintiff'[s] did not simply need to know that the Brigantine ambulance was in the area of the accident, [they] would have to have been aware that the ambulance may have contributed to the accident. This information was not known until the video was received and reviewed.
The judge further noted plaintiffs had timely brought the motion. See N.J.S.A. 59:8-9 (requiring the filing of the notice within one year of the accident).
Appellants challenge the court's finding of extraordinary circumstances, urging that plaintiffs' attorneys were apprised of the existence of Goff and the related public entity in the change report issued shortly after the accident in March 2009. According to appellants, plaintiffs should have relied on the detective's narrative description of the videotapes contained in his change report and filed Tort Claims notices within the ninety-day deadline, and their failure to do so should preclude plaintiffs from relief. We disagree.
The decision to grant permission to file a late notice under the Tort Claims Act "within the one year period is a matter left to the sound discretion of the trial court, and will be sustained on appeal in the absence of a showing of an abuse thereof." Lamb v. Global Landfill Reclaiming, 111 N.J. 134, 146, 543 A.2d 443 (1988). Furthermore, a reviewing court is to "examine more carefully cases in which permission to file a late claim has been denied than those in which it has been granted, to the end that wherever possible cases may be heard on their merits, and any doubts which may exist should be resolved in favor of the application." Lowe v. Zarghami, 158 N.J. 606, 629, 731 A.2d 14 (1999) (quoting Feinberg v. N.J. Dep't of Envtl. Prot., 137 N.J. 126, 135, 644 A.2d 593 (1994)) (internal quotations omitted).
*489 What constitutes extraordinary circumstances is not statutorily defined, and is determined on a case-by-case basis after consideration of the facts. Lowe, supra, 158 N.J. at 626, 731 A.2d 14. For example, extraordinary circumstances can be found based on the severity of a party's injuries. See Maher v. County of Mercer, 384 N.J.Super. 182, 184, 189-90, 894 A.2d 100 (App.Div.2006) (finding extraordinary circumstances where a plaintiff was hospitalized with a life-threatening infection, was in an induced coma and thereafter suffered from severe memory deficits). In determining whether extraordinary circumstances exist, "a judge must consider the collective impact of the circumstances offered as reasons for the delay." R.L. v. State-Operated Sch. Dist., 387 N.J.Super. 331, 341, 903 A.2d 1110 (App.Div.2006).
We have also held that where discovering the identity of a responsible party is not thwarted by the original defendants, the issue becomes "whether plaintiff was diligent and made reasonable efforts to discover the identity of the true tortfeasor." Leidy v. County of Ocean, 398 N.J.Super. 449, 461, 942 A.2d 112 (App. Div.2008). A key factor in determining whether a plaintiff acted with diligence in pursuing his or her claim is the promptness in contacting and retaining counsel to pursue plaintiff's rights. Lowe, supra, 158 N.J. at 626-30, 731 A.2d 14.
Analogous to Maher, both Mendez and his passenger were hospitalized for a number of weeks and continued, at the time of the motion, to suffer memory deficits. Nevertheless, attorneys were retained on their behalf within a month of the accident. Both attorneys served initial Tort Claims notices within the ninety-day period and certified to their multiple attempts, both within and after that time, to obtain the videotapes of the accident scene. It is undisputed the SJTA never responded to the numerous requests from Felix's attorney, and Mendez's attorney was unsuccessful in obtaining the tapes from the municipal prosecutor until October 19, 2009, which she promptly provided to Felix's attorney. Thus, through reasonable diligence, neither attorney was able to view the videotapes until mid-to-late October 2009.
Plaintiffs contend the videotape provides the first basis for a potential claim against appellants. Felix's counsel describes his observations of the videotape, which are similarly described by Mendez's attorney as follows:
A careful review of the video shows the ambulance as it approaches the area of the Tunnel where the three SJTA trucks [were] parked in the left-hand shoulder. As the ambulance approaches the trucks, it moves from the left-lane of travel to the right-lane of travel directly in front of the Mendez vehicle. This lane change by the ambulance may have caused Mendez to take an evasive maneuver, which ultimately caused his vehicle to rotate and collide with the trucks.
Appellants' position would encourage whimsical filings of Tort Claims notices to beat the ninety-day deadline. Absent the videotapes, the four-corners of the change report provided insufficient evidential support regarding the potential involvement of the ambulance in the accident. Due to the severity of their injuries, Mendez and his passenger had no recollection of the events leading up to the accident or the accident itself. There were no eyewitnesses, as no observations were made by the truck drivers or the other paramedic in Goff's ambulance. Goff did not observe Mendez's car and did not remember there being any vehicles in the right lane as he entered and proceeded through the tunnel. Although Goff stated to the trooper that he heard a *490 "loud noise" when he passed the trucks, he attributed the noise to the snow plow being lowered to the ground.
Moreover, the trooper's report of the depictions from the second camera only described the ambulance passing the SJTA trucks and did not describe the ambulance's operation beyond that or any action taken by its driver. It also appears, based on plaintiffs' attorneys' representations of the events depicted on the videotape, the trooper omitted the critical fact of the ambulance's lane change.
Rather than relying on a narrative of an officer's perception of a videotape, particularly in a situation where there were no eyewitnesses to the collision, we would expect a diligent attorney to view the videotape firsthand to be able to file a Torts Claims notice in good faith. There is no question plaintiffs' attorneys promptly and continuously sought to obtain the surveillance videotapes, with which they were not supplied until four and one-half months after expiration of the statutory deadline for filing Torts Claims notices.
Appellants further assert the burden is on plaintiffs to demonstrate that the public entity or public employee will not be "substantially prejudiced" by the late claims notice. See N.J.S.A. 59:8-9 (providing that late-notice relief will be accorded only, if the public entity or its employee will not be "substantially prejudiced" thereby). Appellants additionally contend that burden was not met. We again disagree.
We have construed the "substantial prejudice" prong of N.J.S.A. 59:8-9 as placing on the public entity the burdens of production and persuasion on the question of prejudice. Blank v. City of Elizabeth, 318 N.J.Super. 106, 114, 723 A.2d 75 (App. Div.), aff'd as mod., 162 N.J. 150, 742 A.2d 540 (1999). "Substantial prejudice in this context means substantial prejudice in maintaining one's defense," such as "the loss of witnesses, the loss of evidence, fading memories, and the like." Id. at 114-115, 723 A.2d 75.
Appellants' sole assertion of prejudice is the passage of time. They contend they were "totally unaware of the accident" and "lost a critical opportunity to engage in a timely investigation." We deem that insufficient. The fact of delay alone does not give rise to the assumption of prejudice; the public entity must present a factual basis for the claim of substantial prejudice. Kleinke v. City of Ocean City, 147 N.J.Super. 575, 581, 371 A.2d 785 (App.Div.1977). Substantial prejudice must be shown by "specificity and not by general allegation...." Blank, supra, 318 N.J.Super. at 115, 723 A.2d 75.
We initially question appellants' ignorance of the accident as Goff was questioned the day after the accident. Nevertheless, there has been no representation that evidence has been lost. Photographs were taken of the damage to Mendez's vehicle and the SJTA truck.[4] Moreover, as there were no eyewitnesses to the accident, all pertinent information is still available to the defense as contained on the videotapes. The motions were also brought within a year of the accident, and thus within the one-year time period mandated by N.J.S.A. 59:8-9.
Where there is no evidence in the record of prejudice to the public entity *491 occasioned by the delay in filing the claim and extraordinary circumstances are shown, granting leave to file a late notice is appropriate, as it allows cases to be heard on their merits. Maher, supra, 384 N.J.Super. at 190, 894 A.2d 100; Lowe, supra, 158 N.J. at 629, 731 A.2d 14.
Affirmed.
NOTES
[1] Judge R.B. Coleman did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] The orders do not accurately depict the court's decision, which does not reach the accrual issue. It is clear, however, the court granted relief to plaintiffs based on demonstrations of "extraordinary circumstances" under N.J.S.A. 59:8-9.
[3] Pursuant to Rule 2:2-3(a)(3), effective September 1, 2006, superseding Moon v. Warren Haven Nursing Home, 182 N.J. 507, 867 A.2d 1174 (2005), the list of appealable orders now includes orders deciding motions for leave to file a late notice of tort claim against a public entity pursuant to N.J.S.A. 59:8-9.
[4] At oral argument, Mendez's attorney informed us that Mendez's vehicle has been stored in the wrecked condition.