**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2087-17T2

WENDLASSIDA GANAME,

     Plaintiff-Appellant,

v.

UNIVERSITY HOSPITAL,

     Defendant-Respondent.

_____

Submitted January 24, 2019 – Decided April 25, 2019

Before Judges Alvarez and Reisner.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5545-17.

O'Connor Parsons Lane & Noble LLC, attorneys for appellant (Paul A. O'Connor, III, of counsel; Alexandra Loprete, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Daniel M. Vannella, Deputy Attorney General, and Marti B. Morris, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Wendlassida Ganame appeals the November 17, 2017 order denying her reconsideration of an earlier decision that denied her leave to file a late notice of tort claim in her medical malpractice case. The defendant is the University Hospital, and as yet unknown and unnamed physicians, nurses, and others who administered medical care. Because Ganame's reasons for her failure to timely file constitute a perfect storm of factors totaling extraordinary circumstances within the meaning of N.J.S.A. 59:8-9, we reverse.

When Ganame filed the initial application, defendant had not provided any medical records. Ganame's certification in support of that motion states that she did not even know the names of her healthcare providers. In support of the motion for reconsideration, however, Ganame included the partial medical records that University Hospital had, by the time, provided.

The hospital records revealed the following information. On October 3, 2016, Ganame, who was in labor, was admitted to the hospital in the early morning hours suffering from "severe pre-eclampsia diagnosed by severe [blood pressure] elevations," and "Varicella equivocal." Staff administered "500 pm Pitocin" at 5:17 p.m. to induce labor.

The initial admission hospital records indicate that Ganame, a recent Burkina-Faso immigrant, claimed to understand English and was fluent in

French. The hospital staff decided not to contact the interpreter line. Ganame's husband was also a recent immigrant from Burkina-Faso.

By the following morning, doctors performed a "[p]rimary low transverse cesarean section" because Ganame had "failed induction, [and] severe pre-eclampsia[.]" Ganame's son was born during this procedure.

While at the hospital, Ganame suffered from a 100 degree fever, chills, and abdominal pain. The hospital records for October 6, 2016, at 4 p.m., state she was at "risk for infection due to prolonged induction." Ganame was discharged from the hospital on October 7, 2016, in the afternoon, still suffering from pre-eclampsia.

On October 13, 2016, Ganame was readmitted at 12:20 p.m. with "suprapubic pain, exudates at incision site, foul smelling lochia that has worsened" since the emergent c-section, and "subjective fevers." The c-section skin incision site was observed to be slightly open on the right lateral border and "expressed pus with applied pressure[.]" Ganame was then diagnosed as suffering from "Endometritis and C-section wound infection." The following day, it was found that the c-section's surgical area appeared to have ruptured, and that Ganame may have suffered from "early abscess formation adjacent to her uterus."

 A-2087-17T2

Thereafter, Ganame was diagnosed with "[l]ife-threatening pelvic abscess." She was given "Ampicillin 2g q6hr, Clindamycin 900mg IV q8hr, Gentamicin 5mg/kg/day . . . Motrin and [P]ercocet."

On October 14, 2016, she underwent an "exploratory laparotomy, excision and debridement of necrotic portions of hysterotomy incision, reapproximation of hysterotomy incision, fascial closure." The operative report noted that "[c]opious foul-smelling pus extruding from [Ganame's] endometrial cavity after the fascia was opened. Right anterior uterine wall adherent to necrotic appearing rectus muscle. . . . There was also edematous large bowel that was adherent to the left adnexa." This meant that Ganame's uterine wall and rectus muscle had adhered. Another physician directed her post-operative care, while the physician who conducted the laparotomy "provided intra-operative consultation for management of this challenging case." Ganame's wound was left open.

On October 14, 2016, Ganame was switched to "IV Zosyn and Flagyl," and the Flagyl was switched to "PO Augmentin" on October 17, 2016. On October 15, Ganame started "Heparin 5000u q12" for prophylaxis (preventive treatment). Ganame initially had postoperative tachycardia, but that resolved during her hospitalization.

A-2087-17T2

On October 17, 2016, yet another physician concluded that Ganame tested positive for E.coli and had an acute kidney injury. A different doctor noted that Ganame reported increased pain, had no appetite, had lower abdominal pain every time she ate, and intermittent nausea.

On October 21, the treating physician directed Ganame remain hospitalized for observation and a possible hysterectomy. As of October 27, 2016, she was to continue on IV antibiotics for at least fourteen days, and observed on oral antibiotics for at least twenty-four hours. On October 29, Ganame again reported abdominal pain. It is unclear from the record if a hysterectomy was actually performed.

On November 1, 2016, Ganame was discharged from the hospital with an open abdominal wound. She was required to continue Augmentin for twenty-one days, along with clindamycin. On December 16, 2016, Ganame returned to the emergency room at the hospital with complications and infections related to the c-section. To summarize the medical records, in the initial ninety-day period, in addition to a life-threatening pelvic abscess, Ganame's white blood cell level intermittently increased beyond the normal range and she was administered various narcotics and antibiotics.

A-2087-17T2

At the time of her initial admission, Ganame was twenty-four years old. She then became responsible for the care of her newborn.

On July 17, 2017, again Ganame returned to the emergency room for "complications and infections related to [her] c-section," and was diagnosed with "[a]cute infection of female upper reproductive tract" and "pelvic inflammatory disease." Ganame was prescribed Doxycycline capsules, Metronidazole capsules, and Naproxen tablets.

Ganame's hospital record for the July 17 admission indicates that the diagnosis was the continuing "acute infection of female upper reproductive tract." She was released but returned the following day to the emergency room. Ganame was administered, by injection and orally, the following drugs: ketorolac, ceftriaxone, Doxycycline Hyclate, and metronidazole. Additionally, naproxen and ibuprofen were prescribed for pain, and she was prescribed a hydrocortisone rectal cream.

According to Ganame's certification, it was not until July 2017 that she came to realize that someone had mishandled her care. When she learned on the internet that in the United States she could bring a lawsuit against the medical providers for negligence, she consulted with an attorney and the motion to file out of time followed.

The physician who treated Ganame commencing with her second hospital visit in October 2016, certified that Ganame was asked to sign a permission that included notification that University Hospital is associated with the State and not Rutgers University.

The judge conveyed her analysis of the reconsideration motion, upon which no oral argument was heard, by way of a written order. Her written notation only states: "The court does not find that the order of September 25, 2017 was based upon a palpably incorrect or irrational basis, or that the court did not consider relevant law or evidence by the parties."

I.

We review decisions to grant or deny motions to file N.J.S.A. 59:8-9 late notices of claim under an abuse of discretion standard. D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 147 (2013) (citing Lamb v. Global Landfill Reclaiming, 111 N.J. 134, 146 (1988)). We ordinarily defer to factual findings of the court, and reverse only if the decision is based on a misconception of the law. Ibid. In this case, no factual findings were made.

Motions for reconsideration are also reviewed on appeal under an abuse of discretion standard. Cummings v. Bahr, 295 N.J. Super. 374, 384, 389 (App. Div. 1996). Reconsideration of an earlier decision should be granted where the

court either bases its decision on a palpably incorrect or irrational basis, or the court did not consider or failed to appreciate the significance of probative competent evidence. Id. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

It is well-established that the purpose of the Tort Claims Act (TCA) is to "reestablish the immunity of public entities while coherently ameliorating the harsh results of the doctrine." Beauchamp v. Amedio, 164 N.J. 111, 115 (2000) (citing N.J.S.A. 59:1-2). The notice requirements of the TCA "were not intended as a 'trap for the unwary.'" Lowe v. Zarghami, 158 N.J. 606, 629 (1999) (citation omitted). We more closely examine those cases in which a filing of a late notice of claim was denied, "to the end that wherever possible cases may be heard on their merits, and any doubts which may exist should be resolved in favor of the application." Feinberg v. State Dep't of Envtl. Prot., 137 N.J. 126, 134 (1994) (quoting S.E.W. Friel Co. v. N.J. Tpk. Auth., 73 N.J. 107, 122 (1977)).

N.J.S.A. 59:8-8 provides that when a claimant fails to file within ninety days of accrual of a claim he or she "shall be forever barred from recovering against a public entity or public employee . . . ." But N.J.S.A. 59:8-9 states that at the discretion of a Superior Court judge, a late notice of claim may be filed

"at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby."

No argument is being made in this case that substantial prejudice has resulted from the late filing of this claim. It is defendant's burden to produce and demonstrate such substantial prejudice under N.J.S.A. 59:8-9. See Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 535 (App Div. 2010). Thus, we will not consider the prejudice aspect of the language in N.J.S.A. 59:8-9.

The statute does not define extraordinary circumstances. The court's focus has to be, however, on evidence of Ganame's situation during the ninety-day time period. See D.D., 213 N.J. at 151, 157.

"[A] judge must consider the collective impact of the circumstances offered as reasons for the delay" when "determining whether extraordinary circumstances exist," including "any physical or emotional disability." Mendez, 416 N.J. Super. at 533 (citation omitted) (noting that "extraordinary circumstances can be found based on the severity of a party's injuries"); Escalante v. Twp. of Cinnaminson, 283 N.J. Super. 244, 252 (App. Div. 1995). We have said that "[i]gnorance of the 90–day statutory requirement, ignorance of one's rights or mere ambivalence by the claimant have never been found to

be sufficient reasons on their own to allow late filing," but we have also noted that "ignorance of the statutory requirement may be a relevant consideration in allowing a late claim" under the TCA. Escalante, 283 N.J. Super. at 250 (citations omitted).

In her initial decision, the trial judge concluded that the accrual date in this case was October 2016, as Ganame was then made aware of the fact that her incision had become grossly infected and that she was suffering from unusual significant physical consequences to childbirth. But, the accrual date is actually the date Ganame should have discovered that she may have a basis for an actionable claim. See Baird v. Am. Med. Optics, 155 N.J. 54, 68 (1998).

It would not have been unreasonable for Ganame to have assumed her hospitalization and illness was merely a natural consequence of the birth of her son, during the ninety-day period. There is no reason to doubt the statement in her certification that it was not until her July visits over the course of two days in the emergency room that she would have become aware that she had been injured by a third party. Beauchamp, 164 N.J. at 121, 123. Even the December 16, 2016 hospitalization post-childbirth may not have been sufficient notice that the medical issues from which Ganame was suffering were not merely routine

A-2087-17T2

consequences from the October childbirth, but problems attributable to the negligence of others.

Even if we were to agree, however, that the date of accrual was either October or December, the nature of the condition from which Ganame suffered, when joined with her responsibility in caring for a newborn while a recent immigrant to this country, does constitute a combination of facts which together total extraordinary circumstances. During the ninety-day period commencing October 13, 2016, Ganame's physical condition was such that she was fortunate to have survived. She nearly lost her life, and would not have prioritized determining whether she had a cause of action against anyone.

Furthermore, it is not clear from our review of the reconsideration order, which merely parrots the relevant law, if the judge took into account the medical records first provided by defendant only after the motion for late filing, and thus supplied by Ganame to the court only on reconsideration. The judge in her earlier decision construed the justification for late filing to be Ganame's ignorance of the TCA's notice requirements. Were that decision—which is not under consideration here—correct, certainly the reasons given in the certification and attached medical records submitted in support of the motion

A-2087-17T2

for reconsideration raised new grounds, separate and apart from Ganame's ignorance of the law.

Thus, we conclude that the judge misapplied her discretion in failing to consider and appreciate "the significance of probative, competent evidence" relating to the "collective impact" of all the circumstances, including her dire health status, of Ganame's life. See Cummings, 295 N.J. Super. at 384 (quoting D'Atria, 242 N.J. Super. at 401); Mendez, 416 N.J. Super. at 533. The trial judge made no mention of the new facts and information she was presented, or of the impact the medical records had on her legal analysis.

Generally, "medical conditions meet the extraordinary circumstances standard if they are severe or debilitating." D.D., 213 N.J. at 149-50. ("The consistent theme of these decisions is the severity of the medical condition and the consequential impact on the claimant's very ability to pursue redress and attend to the filing of a claim."). It is fair to say that Ganame was in an extreme physical condition during her hospitalizations from October through December of 2016. Thereafter she continued to suffer from chronic painful and debilitating abdominal infections in the intervening months. Considering the need to resolve possible cases on their merits, we reverse. After consideration of the facts, the

combination of factors in Ganame's life equal extraordinary circumstances.  <u>See</u>

<u>Mendez</u>, 416 N.J. Super. at 533.

Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2087-17T2