**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2679-23

FRANCINE CONZENTINO,

    Plaintiff-Respondent,

v.

THE STATE UNIVERSITY
OF NEW JERSEY RUTGERS,

    Defendant-Appellant,

and

STATE OF NEW JERSEY,
COUNTY OF ESSEX, and
CITY OF NEWARK,

    Defendants.

_____

Submitted May 21, 2025 – Decided July 8, 2025

Before Judges Mayer and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0959-23.

Norris McLaughlin, PA, attorneys for appellant (Edward G. Sponzilli, on the briefs).

Brandon J. Broderick, LLC, attorneys for respondent (Lisa A. Lehrer, of counsel and on the brief).

PER CURIAM

Defendant Rutgers, the State University of New Jersey (Rutgers) appeals from the April 26, 2024 Law Division order granting plaintiff Francine Conzentino leave to file a late notice of tort claim pursuant to N.J.S.A. 59:8-9.[1] We reverse.

I.

Plaintiff alleges that on September 12, 2022, she injured her ankle while walking down stairs in Smith Hall on the Rutgers Newark campus.

On September 27, 2022, plaintiff filed a "Student or Public Incident Alert" (Alert) with the Rutgers Department of Risk Management and Insurance (DRMI). The Alert: (1) listed plaintiff's name and contact information, as well as the time and date of the incident; (2) stated "[a]fter class I went to ask my professor a question, I proceeded down the stairs and twisted my ankle"; (3) stated plaintiff went to a doctor and was diagnosed with a "non-displaced fracture of the 5th metatarsal bone"; and (4) listed the name of a witness. The

---

[1] Rutgers was incorrectly pled as the State University of New Jersey, Rutgers.

2

Alert did not allege Rutgers was at fault for plaintiff's injuries or state she intended to seek damages from Rutgers.

On January 18, 2023, plaintiff retained counsel to file a complaint against Rutgers.

On February 8, 2023, plaintiff's counsel sent a notice of tort claim to the State Department of Treasury. The notice identifies the date, time, and place of plaintiff's injury, describes her injuries in detail, names Rutgers as the party responsible for plaintiff's injuries for its "[f]ailure to maintain and [sic] common areas where students and staff travel," and indicates plaintiff intends to seek damages from Rutgers. Plaintiff's counsel sent a copy of the notice of tort claim to DRMI on February 8, 2023.

On February 9, 2023, plaintiff filed a complaint in the Law Division alleging her injury was the result of Rutgers's palpably unreasonable, negligent, and careless acts resulting in a dangerous and hazardous condition at Smith Hall. The complaint alleges plaintiff complied with the notice provisions of the Tort Claims Act (TCA), N.J.S.A. 59:8-1 to 8-11.

On March 8, 2023, Rutgers moved to dismiss the complaint, arguing plaintiff failed to file a notice of tort claim within ninety days of the accrual of her claim pursuant to N.J.S.A. 59:8-4. In support of the motion, Rutgers

3

submitted a certification of Donna Bahnck, the Assistant Director of DRMI. She certified DRMI is responsible for "the handling of [c]laims asserted against Rutgers and its employees and reviewing notices of tort claim(s) and complaints filed against Rutgers. If a notice of claim is served on Rutgers an[d]/or its employees it will be forwarded to [DRMI]." Bahnck continued:

> Following the alleged incident, I was contacted by telephone by [p]laintiff who inquired about available student health coverage. It is my understanding that [p]laintiff was a part-time student at the time of the accident and advised [p]laintiff that Rutgers does not provide secondary accidental insurance for part-time students.
>
> On or about February 8, 2023, my office received a notice of tort claim on plaintiff's behalf. See attached. This is the only notice of tort claim on file in this matter.

On March 20, 2023, plaintiff cross-moved for leave to file a late notice of tort claim. In support of the cross-motion, plaintiff conceded that "[p]rior to retaining counsel [p]laintiff did not file a notice of claim pursuant to N.J.S.A. Title 59 within the statutory period prescribed . . . ." She argued she failed to file a timely notice of tort claim "because she went in directly to the Rutgers office and did complete an incident report. No one ever told her the document was not sufficient." Plaintiff also argued she substantially complied with the notice of tort claim requirement when she filed the Alert with DRMI.

4

In reply, Rutgers submitted a second certification from Bahnck explaining the purpose and use of Alerts. She certified:

> The purpose of the Alert completed by [p]laintiff is to provide Rutgers with contact and basic information about incidents involving University students, employees, and members of the public. The Alert is an administrative form which is typically used in situations such as the one involving [p]laintiff, to verify identity and student status to determine if the student might be eligible for a secondary accidental policy. This policy is only available to full-time students who pay for it.
>
> In addition to using an Alert to evaluate student eligibility, the University uses the Alerts for other administrative functions, for example certain employee situations or when we need an Alert as part of processing a property loss, theft and/or damage to vehicles and University buildings and other property.

Bahnck explained that "[i]n many instances, no further action is needed upon receipt of the Alert. Many individuals who report an occurrence do not require medical attention or receive treatment at the Student Health Centers. Many of these cases involve reports like that provided by [p]laintiff in this case, i.e., 'twisted ankle.'" She continued, "[t]here are many instances of minor injuries, such as described by [p]laintiff in the Alert, which are either treated by the party themselves through their personal insurance or through Rutgers Health Centers, which are not subject to a tort claim against Rutgers."

5

Bahnck certified Rutgers, as permitted by statute, uses an individualized notice of tort claim form that, if timely submitted, meets the requirements of the TCA. She continued, "[o]nce timely notice of claim is properly served on the University, with a description of the occurrence and theory of liability, an investigation is undertaken with respect to the claimant's allegations." The Alert, which "does not provide the information required in the [Notice of] Claim Form and is only used for administrative purposes." Bahnck certified that "[i]f, as [p]laintiff suggests, Alerts are given the same effect as a Tort Claim Notice, this would have a significant and potentially devastating impact on Rutgers'[s] ability to fund and direct its resources to operate a self-insurance program."

On April 26, 2024, the motion court issued an oral decision. Although the motion court did not expressly address the accrual date of plaintiff's claim, it appears the court proceeded on the assumption the claim accrued on September 12, 2022. In addition, while the motion court did not identify the statutory filing deadline for plaintiff's notice of tort claim, ninety days from September 12, 2022 was December 11, 2022. The court found it was undisputed plaintiff did not file a notice of tort claim within the statutory period.

At oral argument on the motions, Rutgers correctly argued that to obtain leave to file a late notice of tort claim plaintiff must establish extraordinary

A-2679-23

circumstances excusing her failure to file a timely notice of tort claim and her failure to seek leave to do so in a reasonable time after expiration of the ninety-day period. In its decision, however, the motion court found leave to file a late notice of claim is warranted on a showing of "sufficient reasons for [the] failure to file a timely notice of claim . . . ." The sufficient reasons standard employed by the motion court was abandoned by the Legislature in 1994 when it amended N.J.S.A. 59:8-9 and adopted the more demanding extraordinary circumstances standard. See L. 1994, c. 49, § 5 (eff. June 23, 1994).

Citing a 1977 precedent, Klienke v. City of Ocean City, 147 N.J. Super. 575 (App. Div. 1977), issued prior to the 1994 amendment of N.J.S.A. 59:8-9, the motion court noted "courts have found sufficient reasons exist where there has been an excusable neglect or mistake . . . ." The court found plaintiff was unaware of the extent of her injuries initially and "it wasn't until after she saw a doctor that she realized she would need surgery and extensive recovery. Thus, there was a change in circumstances which could explain why she did not immediately file the notice of claim." The court, however, did identify the date on which plaintiff was informed she would need surgery and extensive recovery. It is not clear, therefore, whether plaintiff was aware of the extent of her injuries within ninety days of September 12, 2022, and could have filed a timely notice

7

of tort claim had she acted promptly. Nor did the court make any findings with respect to the amount of time that passed from the date on which plaintiff became aware of the extent of her injuries to March 8, 2023, the date she moved for leave to file a late notice of tort claim.

In addition, the motion court found Rutgers would not be "substantially prejudiced" by plaintiff filing a late notice of tort claim "because defendant had already been on notice of the incident since the filing of" the Alert. The court continued, "[e]ven though this was not an official notice of claim, Rutgers cannot say they were not aware of the incident and could not have investigated the claim." The court did not address plaintiff's substantial compliance argument.

The court entered an April 26, 2024 order granting plaintiff leave to file a late notice of tort claim.

This appeal followed. Rutgers argues: (1) the motion court applied the incorrect standard when it found "sufficient reasons" warranted granting plaintiff leave to file a late notice of tort claim; (2) the holding in Beauchamp v. Amedio, 164 N.J. 111 (2000), rejects the argument, adopted by the motion court, that a claimant who is unaware of the seriousness of her injury could, on that fact alone, be deemed to have met the extraordinary circumstances required to

be granted leave to file a late notice of tort claim; and (3) the record does not support the motion court's finding Rutgers did not suffer prejudice because of plaintiff's failure to file a timely notice of tort claim.[2]

## II.

The TCA modifies the doctrine of sovereign immunity and establishes the parameters within which an injured party may recover for the tortious acts of public entities and employees. Feinberg v. Dep't of Envt'l Protection, 137 N.J. 126, 133 (1994). The statute's "guiding principle" is "that immunity from tort liability is the general rule and liability is the exception." D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013) (quoting Coyne v. Dep't of Transp., 182 N.J. 481, 488 (2005) (internal quotations omitted)). The TCA,

---

[2] The court also entered an April 26, 2024 order denying Rutgers's motion to dismiss the complaint, presumably based on its grant of leave to plaintiff to file a late notice of tort claim. While the interlocutory order granting leave to file a late notice of tort claim was appealable as of right, Rule 2:2-3(b)(7), the interlocutory order denying the motion to dismiss the complaint was not. Rutgers did not move for leave to appeal the order denying its motion to dismiss the complaint. We do not, therefore, have jurisdiction to review that order. As a result, we cannot consider Rutgers's request to reverse the order denying its motion to dismiss the complaint. In light of our reversal of the order granting plaintiff leave to file a late notice of tort claim, Rutgers may elect to move in the Law Division for reconsideration of the order denying Rutgers's motion to dismiss the complaint. Plaintiff would in that instance have the option of raising before the Law Division her undecided substantial compliance argument. We offer no view with respect to the outcome of a motion for reconsideration or whether plaintiff's filing of the Alert substantially complied with the TCA.

therefore, "imposes strict requirements upon litigants seeking to file claims against public entities." McDade v. Siazon, 208 N.J. 463, 468 (2011).

Among those is the requirement the claimant, prior to initiating suit, file a notice of tort claim describing "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted[,]" "[a] general description of the injury, damages or loss incurred[,]" "[t]he name or names of the public entity, employee or employees causing the injury, damages or loss, if known[,]" and "[t]he amount claimed as of the date of the presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim . . . ." N.J.S.A. 59:8-4(a) to (f). The notice of claim

> shall be presented . . . not later than the 90th day after accrual of the cause of action. . . . The claimant shall be forever barred from recovering against a public entity or public employee if:
>
> a. The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in [N.J.S.A.] 59:8-9 . . . .
>
> [N.J.S.A. 59:8-8.]

N.J.S.A. 59:8-9 provides

> [a] claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be

permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter . . . .

"Ascertaining the timeliness of a [TCA] notice requires a simple, three-step sequential analysis that never changes." McNellis-Wallace v. Hoffman, 464 N.J. Super. 409, 416 (App. Div. 2020) (citing Beauchamp, 164 N.J. at 118). "The first step is to determine when the cause of action accrued in accordance with N.J.S.A. 59:8-1." Ibid. "Once the date of accrual is ascertained, one can proceed to the second step, which 'is to determine whether a notice of claim was filed within ninety days' as required by N.J.S.A. 59:8-8." Ibid. "'If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice' under N.J.S.A. 59:8-9." Ibid. (quoting Beauchamp, 164 N.J. at 118-19).

"Accrual shall mean the date on which the claim accrued . . . ." N.J.S.A. 59:8-1. A claim accrues under the TCA "on the date of the accident or incident that gives rise to any injury, however slight, that would be actionable if inflicted by a private citizen." Beauchamp, 164 N.J. at 123. We review de novo the trial

court's determination of an accrual date.  Manalapan Realty, LP v. Twp. Comm., 140 N.J. 366, 378 (1995).  The parties appear to agree plaintiff's claim accrued on September 12, 2022.

As noted above, ninety days from September 12, 2022, was December 11, 2022.  In her moving papers, plaintiff conceded she did not file a notice of tort claim during the ninety-day statutory period.  Plaintiff filed a notice of tort claim on February 8, 2023, after expiration of the ninety-day period, without leave of court.  We consider that filing a nullity.

It was not until March 8, 2023, almost 180 days after her claim accrued, after she filed a complaint incorrectly stating she complied with the notice provisions of the TCA, and after Rutgers moved to dismiss her complaint, that plaintiff moved for leave to file a late notice of tort claim.  Plaintiff's moving papers did not include a certification explaining her failure to file a timely notice of tort claim.  The only supporting certification was from plaintiff's counsel who stated plaintiff's failure to file a timely notice of tort claim was "due to her belief the [Alert] was enough and the failure of Rutgers to tell her anything to the contrary."[3]

---

[3] We do not address whether the certification of plaintiff's counsel satisfies the requirement in N.J.S.A. 59:8-9 that the motion be "supported by affidavits based

A-2679-23

We agree the motion court applied the incorrect standard when it granted plaintiff's motion. "Until 1994, the [TCA] applied a fairly permissive standard when claimants sought to file notices of late claims. Claimants had to demonstrate only 'sufficient reasons' for the delay, and that the State would not be prejudiced as a result." Lowe v. Zarghami, 158 N.J. 606, 625 (1999). "The Legislature enacted a more demanding standard when the TCA was amended in 1994 to require that the 'sufficient reasons' for late filing must constitute 'extraordinary circumstances.'" Ibid.; see L. 1994, c. 49, § 5 (eff. June 23, 1994). The 1994 amendment "raise[d] the bar for the filing of a late notice" of claim. Rogers v. Cape May Cnty. Office of Pub. Def., 208 N.J. 414, 428 (2011).

The TCA does not define what constitutes "extraordinary circumstances," leaving "for a case-by-case determination . . . whether the reasons given rise to the level of 'extraordinary' on the facts presented." Lowe, 158 N.J. at 626 (citations and internal quotations omitted). However, as the Supreme Court explained,

> [t]he Legislature's grant of authority to trial courts to permit a late notice in the exercise of their discretion does not equate with a grant of authority to override the statute's declaration of purpose or to substitute a lesser standard of proofs for the extraordinary circumstances

upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file" a timely notice of tort claim.

13

demanded by the 1994 amendment to the statute itself. Trial courts, in exercising their statutory authority, and appellate courts, in reviewing those decisions, must ensure that their decisions are faithful to the overall legislative framework in order that the statute's essential purposes be preserved and not eroded through excessive or inappropriate exceptions. Courts faced with applications for leave to file a late notice of claim, therefore, must proceed with their evaluation mindful of the Legislature's direction that the proofs demonstrate circumstances that are not merely sufficient, but that they instead be extraordinary.

[D.D., 213 N.J. at 148-49.]

The party seeking leave to file a late notice of claim bears the burden of establishing extraordinary circumstances justifying the late filing. Ventola v. N.J. Veterans' Mem'l Home, 164 N.J. 74, 80 (2000). We review the trial court's application of the extraordinary circumstances exception in N.J.S.A. 59:8-9 for an abuse of discretion. McDade, 208 N.J. at 476-77. "Although deference will ordinarily be given" to the trial court's fact findings, "the court's conclusions will be overturned if they were reached under a misconception of the law." D.D., 213 N.J. at 147.

The motion court mistakenly granted plaintiff leave to file a late notice of tort claim based on finding "sufficient reasons" for plaintiff having not complied with the ninety-day filing period. The Legislature replaced the sufficient reasons standard with a more restrictive standard approximately thirty years ago.

14

The motion court's misstatement of the correct standard warrants reversal of the April 26, 2024 order.

Moreover, we discern no evidence in the motion record satisfying the extraordinary circumstances standard in support of granting plaintiff leave to file a late notice of tort claim. Plaintiff's counsel certified plaintiff did not file a timely notice of tort claim because she believed her filing the Alert satisfied the TCA. Without addressing the basis advanced by plaintiff's attorney in support of the motion to file a late notice of tort claim, the motion court explained it granted plaintiff's motion because "it wasn't until after [plaintiff] saw a doctor that she realized she would need surgery and extensive recovery." The court did not identify the evidentiary basis for its finding and our search of the record reveals no certification from plaintiff stating when she realized she required surgery and a lengthy recovery period post-surgery. Here, the record is devoid of any certification from plaintiff.

The Alert, filed by plaintiff just fifteen days after the accrual of her claim, states she was "taken to a doctor or hospital" and diagnosed with a "non-displaced fracture of the 5th metatarsal bone." On this record, plaintiff knew she suffered a fracture well within the ninety-day statutory period for filing a notice of tort claim.

15

Nor did the motion court make any findings with respect to plaintiff's purported reliance on the Alert as her compliance with the TCA. The Alert does not attribute blame to Rutgers or its employees for plaintiff's injuries, identify a dangerous condition or other alleged cause of her injuries, or state plaintiff's intention to seek damages. In the absence of a certification from plaintiff regarding her reliance on the Alert, we are unable to discern any basis for the motion court to find the Alert met the requirements of the TCA.

In addition, the record establishes plaintiff retained counsel as of January 18, 2023, to assert a claim against Rutgers. Yet, she did not move for leave to file a late notice of tort claim until March 8, 2023, almost two months later, and only after Rutgers moved to dismiss her complaint. During those almost two months, plaintiff filed both a late notice of tort claim without leave of court and a complaint that inaccurately stated she complied with the notice provisions of the TCA.

The motion court did not address the period between December 11, 2022, and March 8, 2023. N.J.S.A. 59:8-9, however, requires a showing of extraordinary circumstances justifying a failure to "seek[] leave to file a late notice of claim within a reasonable time" after expiration of the ninety-day statutory period.

A-2679-23

Counsel's failure to file a motion for leave to file a late notice of tort claim from January 18, 2023, to March 8, 2023, does not constitute extraordinary circumstances. As our Supreme Court unequivocally held, "we cannot agree that an attorney's inattention to a file, or even ignorance of the law, equates with extraordinary circumstances for tort claims purposes." D.D., 213 N.J. at 156.

The few instances in which published precedents support a finding of extraordinary circumstances are inapplicable here. The record does not demonstrate the involvement of Rutgers or its officials was withheld from plaintiff by another public entity. See Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 534 (App. Div. 2010) (finding extraordinary circumstances where a videotape depicting the involvement of a municipal ambulance in a motor vehicle accident that injured the plaintiff was withheld by a public highway authority until after expiration of the ninety-day notice period). To the contrary, plaintiff's filing of the Alert demonstrated she was immediately aware Rutgers owned and maintained the staircase on which she was injured.

Nor was the involvement of Rutgers obscured by the circumstances that gave rise to plaintiff's injuries. See Lowe, 158 N.J. at 629 (finding extraordinary circumstances where a physician employed by a public entity allegedly committed medical malpractice during surgery on plaintiff at private hospital,

17

obscuring his public employment). There also was no confusion as to whether a State or federal agency owned and maintained Smith Hall. See Ventola, 164 N.J. at 82 (finding extraordinary circumstance where plaintiff was under the mistaken impression a veterans' residential care facility was operated by the federal government). Plaintiff's failure to file a timely notice of claim also cannot be attributed to an attorney's reasonable reliance on precedent from this court that arguably supported his interpretation of the TCA's notice requirement. See Beauchamp, 164 N.J. at 122-23. Nor did plaintiff prepare a timely notice of claim naming Rutgers but mistakenly submitted to the wrong public entity while another claimant filed a timely notice of claim with Rutgers arising from the same incident naming the plaintiff as an injured party, two factors found to be a "rare case" constituting extraordinary circumstances in O'Donnell v. N.J. Turnpike Auth., 236 N.J. 335, 350-52 (2019).

We need not address whether Rutgers would suffer no prejudice as a result of the filing of a late notice of tort claim. In light of our conclusion plaintiff failed to demonstrate extraordinary circumstances warranting the late filing of a notice of tort claim, prejudice to Rutgers is not relevant to our analysis.[4]

_____

[4] We would be remiss not to note plaintiff's brief does not address Rutgers's argument the motion court applied the incorrect standard when deciding

Reversed. The matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

---

plaintiff's motion. Moreover, plaintiff's brief repeatedly cites the "sufficient reasons" standard repealed in 1994, and relies on precedents interpreting the pre-1994 version of N.J.S.A. 59:8-9. Plaintiff does not explain her reliance on a version of N.J.S.A. 59:8-9 repealed approximately thirty years ago. In her point heading and once in the legal argument section of the brief plaintiff argues "exceptional circumstances" warranted granting her leave to file a late notice of tort claim. It is not clear if plaintiff's counsel intended to refer to the "extraordinary circumstances" standard in N.J.S.A. 59:8-9.

A-2679-23