701 A.2d 717

DANIEL J. O'NEILL, PLAINTIFF–APPELLANT, v. CITY OF NEW-ARK, UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY AND NEW JERSEY TRANSIT, DEFENDANTS–RE-SPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 1, 1997—Decided October 14, 1997.

544

Before Judges SHEBELL, D'ANNUNZIO and COBURN.

*James R. Zazzali* argued the cause for appellant (*Zazzali, Zazzali, Fagella & Nowak,* attorneys; *Mr. Zazzali* and *Kenneth I. Nowak,* of counsel; *Mr. Zazzali, Mr. Nowak, Michael J. Buonaguro* and *Robin M. Messing,* on the brief).

*Terri J. Harrison* argued the cause for respondent, University of Medicine and Dentistry of New Jersey (*Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, P.C.,* attorneys; *Ms. Harrison* and *Thomas R. Hower,* on the brief).

*Bertram P. Goltz, Jr.,* Deputy Attorney General, argued the cause for respondent, New Jersey Transit (*Peter Verniero,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Mr. Goltz* on the brief).

*Alexis Enderle* argued the cause for respondent, City of Newark (*Michelle Hollar–Gregory,* Corporation Counsel, City of Newark, Department of Law, attorney; *Nathaniel M. Davis,* Assistant Corporation Counsel, on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

On June 18, 1996, plaintiff, Daniel J. O'Neill, filed a Notice of Motion in the Law Division for Leave to File Late Notices of Claim under the Tort Claims Act against the defendants, City of Newark ("Newark"), New Jersey Transit ("Transit"), and the University of Medicine and Dentistry of New Jersey ("UMDNJ").[1] The motion was opposed and on August 12, 1996, the Law Division judge entered an order denying plaintiff's motion. The motion

---

[1] The late notice of claim is statutorily required to precede by six months the filing of a complaint. *N.J.S.A.* 59:8–8.

was decided without oral argument, even though plaintiff had requested it. On August 27, 1996, plaintiff moved for reconsideration. On September 27, 1996, oral argument was held and thereafter the judge denied plaintiff's motion. Plaintiff appeals.

Plaintiff was a Transit Police Officer. On August 3, 1995 at around 11 p.m., he and another officer were investigating several thefts in Newark when they observed a door slightly ajar at the side entrance to an auto body shop located at 335 Orange Street, the site of prior thefts. The locks on the door had been cut off. They entered the building and observed two vehicles and several car parts. Hearing noises coming from the upper level, they went up the stairs and entered a room where they observed additional vehicle parts.

The officers believed that they had discovered a "chop shop" and were going to report it when they saw another door and decided to investigate. Entering the room, they saw more auto parts. Suddenly, a barking dog ran at them. They retreated, and as they ran down the staircase with their weapons drawn the staircase collapsed. As a result, plaintiff was hit in the back of his right thigh by a round discharged from one of the weapons. Plaintiff was unable to walk, so the other officer carried him to their vehicle.

Numerous Transit officers, Newark police officers, EMS personnel, and investigators from the Essex County Prosecutor's Office converged upon the scene. During the investigation at the scene, Marcel Saucedo was identified as the owner of the property and the dog. News accounts of the accident appeared in the August 4 and 5, 1995 editions of *The Star–Ledger.*

Plaintiff was brought to the trauma unit of UMDNJ, where he was admitted for a gun shot wound of his right thigh. He was diagnosed with a right common peroneal nerve injury. He lost neurological function in his leg as a result of the nerve damage. The only treatment he received at UMDNJ was the cleaning and dressing of his wound, and he was discharged within hours. The bullet remained lodged against his pelvis.

Plaintiff's follow-up appointment at UMDNJ was canceled by the Transit's rehabilitation nurse overseeing his treatment, who scheduled another appointment with a different doctor. As his specialty was proctology, this doctor instructed plaintiff to have Transit schedule an appointment with a neurologist.

On August 22, 1995, nineteen days after the accident, plaintiff was examined by a neurologist who noted there was no response or motor activity in plaintiff's right leg. The neurologist concluded there was evidence of a right distal sciatic nerve injury and recommended that a follow-up study be conducted in six to eight weeks. On September 12, 1995, the neurologist noted that there was no change in plaintiff's condition and that exploratory surgery and an MRI scan of the right thigh might be needed. On September 19, 1995, an instructor in clinical neurological surgery at Columbia University School of Medicine also recommended surgery.

Plaintiff next had a consultation with a neurosurgeon in New Jersey who agreed that there was damage to the common peroneal nerve and that the recommended nerve repair be performed by microsurgery. On October 9, 1995, plaintiff underwent surgery at Morristown Memorial Hospital. The surgeon discovered that the peroneal nerve was divided high in the thigh just beneath the lower margins of the gluteus. The damage was repaired and plaintiff was released from the hospital on October 13, 1995. He was fitted with a leg brace to wear 24 hours a day. Additionally, he was not allowed to shower and for three months was required to use a portable commode.

On December 26, 1995, plaintiff had a follow-up appointment with his surgeon who noted no change in his neurological condition and that none could be expected so soon after the surgery. The surgeon recommended that the brace be adjusted periodically to increase the leg's mobility and that physical therapy be started to build up plaintiff's quadricep muscle. He was confined to his home until January 1996, with the exception of visits for medical treatment.

On January 15, 1996, plaintiff contacted a law firm seeking legal representation. On January 17, 1996, plaintiff was interviewed by the firm. However, the 90–day statutory period to file a Notice of Claim against the public entities under the Tort Claims Act had already expired.

During the first week of February 1996, plaintiff returned to a "light duty" desk job at New Jersey Transit. A psychological examination of plaintiff took place on February 12, 1996. The consulting psychologist diagnosed him as suffering from Post–Traumatic Stress Disorder and Adjustment Disorder. The psychologist concluded that plaintiff should have undergone critical incident debriefing protocol and follow-up psychological interventions immediately after the accident.

On January 22, 1996, the law firm forwarded record requests to Morristown Memorial Hospital and the two neurologists. On January 25, 1996, a request for medical records and authorization was forwarded to UMDNJ. Between January 31, 1996 and April 8, 1996 medical records and reports were received. Plaintiff's attorneys became aware of a potential claim against UMDNJ and New Jersey Transit after receiving the medical records.

The law firm mailed a request to Transit on February 27, 1996, requesting photographs and records of the investigation. A follow-up request was forwarded on April 4, 1996. That same day a request was sent to Transit's Medical Director in an attempt to obtain plaintiff's medical records. On April 19, 1996, plaintiff's counsel requested assistance from the Attorney General to compel Transit to release the information, but on April 30, 1996, the Attorney General declined assistance.

On April 4, 1996, the law firm requested a report from the consulting psychologist. The psychologist, on April 12, 1996, requested an advanced fee for the service. This was forwarded, and the report was received on May 3, 1996.

On February 8, 1996, the law firm had written to Saucedo, the alleged owner of the building. The correspondence was returned

on February 20, 1996 marked "undeliverable as addressed." Counsel conducted a Motor Vehicle search on Saucedo as well as a Secretary of State search. In a phone interview with Saucedo on April 8, 1996, counsel discovered that Newark was the owner of the building. This information was confirmed in a Dun & Bradstreet report. As noted, on June 18, 1996, the Notice of Motion to file Late Notices of Claim was filed.

I

In 1972 the Legislature passed the Tort Claims Act ("Act"), *N.J.S.A.* 59:1–1 to 12–3, which created a statutory scheme for claims to be brought against public entities. No such action may be brought unless it is in accord with the procedure established under the Act. *N.J.S.A.* 59:8–3.

▇ The Act establishes a 90–day period from the time the claim accrues for a plaintiff to file a Notice of Claim. *N.J.S.A.* 59:8–8. *N.J.S.A.* 59:8–8 provides:

A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action. After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity or public employee if:

a. He failed to file his claim with the public entity within 90 days of accrual of the claim except as otherwise provided in section 59:8–9[.]

N.J.S.A. 59:8–8(a).

The purpose of the 90–day limit is to "compel a claimant to expose his intention and information early in the process in order to permit the public entity to undertake an investigation while witnesses are available and the facts are fresh." *Lutz v. Township of Gloucester,* 153 *N.J.Super.* 461, 466, 380 *A.2d* 280 (App.Div.1977).

*N.J.S.A.* 59:8–9 provides for the filing of a late Notice of Claim. Originally, it provided a plaintiff had to show "sufficient reasons" for failure to file within the 90–day period to be granted permission to file a late notice of claim. However, this section was amended in 1994, to read:

A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity <u>or the public employee</u> has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting <u>extraordinary circumstances</u> for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a <u>reasonable time</u> thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

[Amendments indicated by underline.]

■■■ The Law Division has discretion to grant or deny permission to file a late notice of claim within the one year period, and the decision "will be sustained on appeal in the absence of a showing of an abuse thereof." *Lamb v. Global Landfill Reclaiming,* 111 *N.J.* 134, 146, 543 *A.*2d 443 (1988). Despite the 1994 amendments, the abuse of discretion standard of review remains the same. *Ohlweiler v. Township of Chatham,* 290 *N.J.Super.* 399, 403, 675 *A.*2d 1176 (App.Div.1996). On review, we carefully scrutinize those cases in which permission to file a late claim has been denied. *Feinberg v. State, D.E.P.,* 137 *N.J.* 126, 134, 644 *A.*2d 593 (1994) (quoting *S.E.W. Friel Co. v. New Jersey Turnpike Auth.,* 73 *N.J.* 107, 122, 373 *A.*2d 364 (1977)). While deference will ordinarily be given to discretionary decisions, such decisions will be overturned if they were made under a misconception of the applicable law. *Alk Assoc., Inc. v. Multimodal Applied Sys., Inc.,* 276 *N.J.Super.* 310, 314, 647 *A.*2d 1359 (App.Div.1994).

## II

■■ We are not persuaded that the Law Division judge abused her discretion in concluding plaintiff failed to demonstrate sufficient reasons to constitute "extraordinary circumstances" for his failure to file a timely Notice of Claim. We, therefore, need not consider the additional arguments urged by defendants to support the judge's denial of relief.

■ *N.J.S.A.* 59:8–9 does not define "extraordinary circumstances." In common parlance the term would mean "unique" or "unusual" circumstances. It is for the courts to determine on a case-by-case basis what circumstances will constitute "extraordinary circumstances." *Ohlweiler, supra,* 290 *N.J.Super.* at 404, 675 *A.*2d 1176.

A case interpreting the post-amendment "extraordinary circumstances" requirement of *N.J.S.A.* 59:8–9, is *Zois v. New Jersey Sports & Exposition Auth.,* 286 *N.J.Super.* 670, 670 *A.*2d 92 (App.Div.1996). There, the plaintiff fell after stepping on a beer can in the men's room in the Meadowlands Sports Complex. Plaintiff's attorney's explanation for not filing a timely Notice of Claim was that his secretary had misplaced the file and failed to call it to his attention. *Id.* at 674, 670 *A.*2d 92. We observed that even if this failure might have satisfied the prior standard of "sufficient reason," provided defendant was not prejudiced, it did not meet the stricter "extraordinary circumstances" test. *Id.* "[F]ailure to supervise one's secretary does not ordinarily present such 'extraordinary circumstances' as will permit an attorney to file a late demand." *Id.* at 675, 670 *A.*2d 92 (quoting *Sprowl v. Kitselman,* 267 *N.J.Super.* 602, 609, 632 *A.*2d 540 (App.Div.1993)); *see also Wood v. County of Burlington,* 302 *N.J.Super.* 371, 695 *A.*2d 377 (App.Div.1997) (reversing trial court's decision to grant plaintiff's leave to file a late Notice of Claim, because plaintiff's ignorance of law does not constitute "extraordinary circumstances").

Only one reported case, *Ohlweiler v. Township of Chatham, supra,* 290 *N.J.Super.* 399, 675 *A.*2d 1176, has affirmed the granting of permission to file a late Notice of Claim under the new standard. A public school teacher brought her students on a field trip to a sewage disposal system owned and operated by defendant. *Id.* at 400, 675 *A.*2d 1176. During the tour of the plant, the teacher fell into an uncovered manhole and sustained, what initially was diagnosed as, a minor knee injury. *Id.* Her attorney said that because of the minor nature of the injury, she did not have a

cause of action under the Act. *Id.* at 401, 675 *A*.2d 1176. Howev-
er, the condition of her knee worsened, and her injury was then
diagnosed as torn knee cartilage. *Id.* Plaintiff then filed a motion
for leave to file a late Notice of Claim. *Id.* at 402, 675 *A*.2d 1176.

In affirming the decision to allow plaintiff to file a late notice,
we noted that plaintiff "was diligent and timely throughout in
seeking both medical care and legal advice respecting her injury."
*Id.* at 405, 675 *A*.2d 1176. Relying on legal advice, she believed at
first that a claim would not stand because her injury was diag-
nosed as temporary and would heal. *Id.* The circumstances were
extraordinary because her condition worsened despite the earlier
diagnosis. *Id.*

Here, plaintiff's counsel was not consulted until after the 90–day
period had expired. Therefore, the threshold question to be
considered is whether plaintiff's failure to act in the first 90 days
following the incident was because of "extraordinary circum-
stances." It cannot be denied that plaintiff had a serious injury
that limited to some extent his mobility and curtailed his activities.

However, on the night of the injury, he was initially treated only
in the trauma unit and discharged to his home as "stable" by
around 8 o'clock that same morning. Plaintiff's only in-patient
hospital confinement was from October 9 to October 16, 1995,
when he underwent surgery to repair nerve damage in his leg and
was fitted with a leg brace. He returned home following the
confinement and was able to travel to and from his surgeon's office
for follow-up care. Moreover, there is an absence of medical
evidence in the record that plaintiff was unable to leave home.

It is not significant that plaintiff may have been unaware of
the notice requirements. Ignorance of the law, without more,
does not constitute sufficient reason for delay. *Escalante v.
Township of Cinnaminson,* 283 *N.J.Super.* 244, 250, 661 *A*.2d 837
(App.Div.1995); *Randazzo v. Township of Washington,* 286
*N.J.Super.* 215, 219, 668 *A*.2d 1083 (App.Div.1995). We find no
hint of a legislative intent that the time to give notice should be

extended until the party discovers a public entity is involved. We noted in *Dunn v. Borough of Mountainside,* 301 *N.J.Super.* 262, 274, 693 *A.*2d 1248 (App.Div.1997) that the discovery "rule does not delay the accrual of the cause of action when the plaintiff knows about the injury but cannot determine the tortfeasor's identity."

In any event, here, plaintiff was aware of the circumstances surrounding and the severity of his injury. As a result, there was no surprise as to the nature of the injury which would justify taking so long to contact an attorney. *Cf. Ohlweiler, supra,* 290 *N.J.Super.* at 405, 675 *A.*2d 1176. It was his obligation to seek legal advice as to his remedies, as long as he was physically and psychologically capable. We are convinced that his physical incapacitation and confinement to his home in the days before and after his October surgery cannot be said to have prevented him from contacting an attorney or otherwise acting to protect his rights. Compare circumstances constituting "sufficient reasons" under pre-amendment provision, *S.E.W. Friel Co., supra,* 73 *N.J.* 107, 373 *A.*2d 364 (nonresident trucker suffered grievous injuries requiring out-of-state hospitalization for ninety days and confinement to home for one year); *Murray v. Barnegat Lighthouse,* 200 *N.J.Super.* 534, 491 *A.*2d 1290 (App.Div.1985) (injuries confined claimant to home for many months); *Kleinke v. Ocean City,* 147 *N.J.Super.* 575, 371 *A.*2d 785 (App.Div.1977) (out-of-state resident with severe fracture who developed near fatal embolism and confined to hospital for two months); *Marino v. Union City,* 136 *N.J.Super.* 233, 345 *A.*2d 374 (Law Div.1975) (quadriplegic hospitalized out of state); *Wade v. New Jersey Turnpike Auth.,* 132 *N.J.Super.* 92, 332 *A.*2d 232 (Law Div.1975) (several months hospitalization out of state).

Plaintiff argues that before the accident, he was a perfectly healthy, active 25–year–old, and as a police officer, he was on footpatrole. After the accident, he no longer had neurological function in his right leg. Plaintiff argues that these circumstances had a serious psychological effect on him that prevented him from

contacting an attorney. This assertion, however, is not supported by the psychologist's report that plaintiff supplied to the court. The psychologist's observation that plaintiff should have received counseling immediately after the accident does not mean he could not function sufficiently to appreciate the need to seek advice as to possible liability for his injuries.

Plaintiff was able to leave his home, as evidenced by his trips to various doctors in the days after the accident, and neither plaintiff nor the psychological examination provides sufficient proof that he did not have the mental capacity to contact an attorney. The obvious inference is, therefore, that plaintiff could have made a trip to an attorney's office or, at least, called one on the telephone, especially since his own certification does not state any facts to the contrary. His failure to contact an attorney cannot in these circumstances be said to be the result of extraordinary circumstances.

In evaluating the judge's decision, we have viewed the facts in the light most favorable to the plaintiff, and resolved any doubts in his favor. We are nonetheless unable to accept plaintiff's argument that he was prevented from filing within the 90–day period. We can appreciate that plaintiff was justifiably preoccupied with getting his leg examined and treated after the accident, rather than with filing a lawsuit. However, this is insufficient reason to support a finding of extraordinary circumstances without an expert opinion that plaintiff was incapable of contacting an attorney as any such inability is less than obvious.

We recognize that the motion judge failed to address many of plaintiff's factual and legal arguments, however, we are convinced after a thorough review of the record and the benefit of extensive written and legal argument by plaintiff's learned counsel that a finding that extraordinary circumstances existed cannot be supported, even drawing all inferences in favor of plaintiff.

Affirmed.