**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1618-19T2
A-1630-19T2

SHYNELL ANTHONY,

    Plaintiff-Respondent,

v.

NEWARK HOUSING
AUTHORITY, and CITY
OF NEWARK,

    Defendants-Appellants,

and

NEWARK HOUSING
AUTHORITY COMMUNITY
CENTER,

    Defendant.

_____

Submitted November 17, 2020 – Decided December 31, 2020

Before Judges Fisher, Moynihan, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3441-19.

Biancamano & DiStefano, P.C., attorneys for appellant Newark Housing Authority (James G. Serritella, on the briefs).

Kenyatta K. Stewart, Corporation Counsel, attorney for appellant City of Newark, join in the brief of appellant.

James C. DeZao, attorney for respondent.

PER CURIAM

In these consolidated appeals, defendants Newark Housing Authority (Authority) and City of Newark appeal an order granting plaintiff's motion for leave to file a late tort-claim notice pursuant to N.J.S.A 59:8-9 of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 14-4 (the TCA).[1] Because the judge erred in finding that plaintiff had established extraordinary circumstances justifying the late notice, we reverse.

We assume all facts alleged by plaintiff to be true and give her the "benefit of all inferences that may be drawn from those facts." Feinberg v. N.J. Dep't of Envtl. Prot., 137 N.J. 126, 129 (1994). While walking within an Authority residential complex on July 21, 2018, plaintiff tripped over a large gap in the sidewalk, fell, and broke her leg. She went to a hospital that night and was

---

[1] The Authority and the city filed separate appeals of the same order. Those appeals were consolidated. With this decision, we resolve both appeals.

placed in a soft cast. She had surgery on August 13, 2018. For five months plaintiff was unable to work; she could not drive or "complete basic tasks of living."[2] She depended on her daughter and focused on "basic daily tasks" and healing herself.

In December 2018, plaintiff consulted with an attorney about the possibility of bringing a claim. According to plaintiff, that attorney told her that she "could not be helped because of some [ninety]-day rule." Plaintiff and her daughter were not aware of the TCA requirement that a notice of claim against a public entity be filed within ninety days of the claim's accrual. N.J.S.A. 59:8-8. The attorney did not tell her that anything else could be done and did not suggest she obtain a second opinion. Some unspecified months later, she contacted her current attorney because she wanted to be sure that the advice she had received was correct and because she felt like her ankle would never fully heal.

On May 8, 2019, ten months after the accident, plaintiff's current counsel filed a motion for leave to file a late notice of tort claim pursuant to N.J.S.A. 59:8-9. The motion was supported only by plaintiff's and her daughter's

---

[2] Plaintiff did not describe the nature of her work or identify which "basic tasks of living" she could not complete.

A-1618-19T2

certifications. Plaintiff did not provide any medical or other documents evidencing plaintiff's assertions about her ability to work, drive, or perform "basic tasks of living" in the months following her surgery or about an inability to seek counsel or otherwise pursue her claim. At oral argument after expressing concern that the record was "somewhat thin," the judge permitted plaintiff to supplement the record. Plaintiff did not submit any additional information or documentation.

Despite the sparse record, the judge granted plaintiff's motion, finding that plaintiff had established extraordinary circumstances for her failure to file timely the notice of claim. Acknowledging that plaintiff had not presented any evidence of mental incapacity or memory failure, the judge nevertheless found that plaintiff's "injuries were sufficiently severe to warrant surgery approximately a month after the accident and a lengthy period of physical incapacity" and that "[d]uring this time, [plaintiff] concentrated on her recovery, was unable to drive or walk and relied on her daughter for assistance." He concluded that "[o]ne may reasonably infer from these circumstances that such difficulties impeded her ability during the [ninety-day] period to consult counsel as to her legal rights." Other than saying that plaintiff was unaware of the right to apply for relief from the notice requirement until she consulted her current

4

attorney, the judge did not address the time period between when she consulted with an attorney in December 2018 and when her current attorney filed the motion in May 2019. The judge also found that plaintiff's late notice would not substantially prejudice defendants, relying on plaintiff's assertion that the condition of the accident site was "unchanged." Based on "the severity of the injury, the temporary physical incapacity for the same and [plaintiff's] lack of knowledge of the Notice of Claim requirement," the judge indicated that he would "resolve doubts" in favor of plaintiff, citing Lowe v. Zarghami, 158 N.J. 606, 629 (1999), and granted her motion.

Defendants appeal, arguing that the judge erred in finding extraordinary circumstances given that plaintiff had not provided evidence that extraordinary circumstances prevented her from obtaining legal advice within the ninety days following the accident and in reaching the issue of prejudice. In response, plaintiff contends that because of the severity and extent of her injury, which was a broken leg,[3] the judge correctly found that she had established extraordinary circumstances. Plaintiff also argues that ignorance of the ninety-

---

[3] In her appellate brief, plaintiff states that she "was suddenly unable to use her arms." That factual assertion appears to be an error. In her certification, plaintiff said nothing about her arms.

day deadline for filing a notice of claim is sufficient to justify the late notice and that the judge properly considered a lack of prejudice to defendants.

We review decisions regarding motions to file late notices of claim pursuant to N.J.S.A. 59:8-9 under an abuse-of-discretion standard. D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 147 (2013); see also O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 344 (2019) (noting N.J.S.A. 59:8-9 leaves the determination of whether a late notice may be filed to judge's discretion). An abuse of discretion occurs when a judge's decision "was not premised upon consideration of all relevant facts, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005); see also State v. S.N., 231 N.J. 497, 515 (2018). A judge's interpretation and application of the TCA to undisputed facts is a legal determination that we review de novo. See Jones v. Morey's Pier, Inc., 230 N.J. 142, 153 (2017). "Although deference will ordinarily be given to the factual findings that undergird the trial court's decision, the court's conclusions will be overturned if they were reached under a misconception of the law." D.D., 213 N.J. at 147.

The TCA governs when public entities are liable for their torts. Nieves v. Adolf, 241 N.J. 567, 571 (2020). To proceed with a tort claim against a public

6

entity, a plaintiff must file with the public entity a notice of claim within ninety days of the action's accrual. O'Donnell, 236 N.J. at 345; see also N.J.S.A. 59:8-8. A court may grant a plaintiff who has not met that deadline leave to file a late notice of claim within one year of the accrual of the claim, provided the plaintiff demonstrates extraordinary circumstances that prevented a timely filing and the public entity has not been substantially prejudiced by the delay. O'Donnell, 236 N.J. at 346; see also N.J.S.A. 59:8-9. The failure to file "within ninety days under normal conditions or within one year under extraordinary circumstances" bars a plaintiff from bringing a tort claim against a public entity. Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 133 (2017); see also N.J.S.A. 59:8-8(a).

Our Supreme Court requires judges determining the timeliness of a notice of claim under N.J.S.A. 59:8-8 to perform a "sequential analysis." Bayer v. Twp. of Union, 414 N.J. Super. 238, 258 (App. Div. 2010); see also Beauchamp v. Amedio, 164 N.J. 111, 118 (2000). The judge first must determine when the claim accrued. Bayer, 414 N.J. Super. at 258. The judge next must determine if the notice of claim was filed within ninety days of the accrual date, and, if not, whether extraordinary circumstances justify the late notice. Ibid. Here, it is undisputed that the claim accrued on the date of the accident, July 21, 2018,

and that plaintiff did not submit her notice of claim within ninety days of the accrual date.

"Extraordinary circumstances" became the standard for analyzing late tort-claim notices in 1994 when our Legislature amended the TCA, replacing the "sufficient reasons" standard, which had been "a fairly permissive standard," with the "extraordinary circumstances" standard, a "more demanding" threshold. Lowe, 158 N.J. at 625; see also D.D., 213 N.J. at 148 (characterizing the 1994 amendment as imposing a "more exacting standard"); Rogers v. Cape May Cty. Office of Pub. Def., 208 N.J. 414, 428 (2011) (finding that purpose of 1994 amendment "was to raise the bar for the filing of a late notice"). To avoid "excessive or inappropriate exceptions" to the general rule of sovereign immunity, judges assessing proffered reasons for late tort-claim notices must be "mindful of the Legislature's direction that the proofs demonstrate circumstances that are not merely sufficient, but that they instead be extraordinary." D.D., 213 N.J. at 134, 148-49.

A claimant must show "sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim" within the ninety-day period. N.J.S.A. 59:8-9; see also Beyer v. Sea Bright Borough, 440 N.J. Super. 424, 429 (App. Div. 2015). The TCA "does not define 'extraordinary

circumstances.'" O'Neill v. City of Newark, 304 N.J. Super. 543, 551 (App. Div. 1997). Thus, "[i]t is for the courts to determine, on a case-by-case basis, what circumstances, in the context presented, will satisfy the statutory requirement." Allen v. Krause, 306 N.J. Super. 448, 455 (App. Div. 1997). In determining whether extraordinary circumstances justify a delay in filing the notice of claim, a judge must focus on evidence of a plaintiff's situation during the ninety-day period following the accrual date. See D.D., 213 N.J. at 151. A judge "must consider the collective impact of the circumstances offered as reasons for the delay." R.L. v. State-Operated Sch. Dist., 387 N.J. Super. 331, 341 (App. Div. 2006); see also Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 533 (App. Div. 2010).

Medical conditions meet the extraordinary-circumstances standard if they are "severe or debilitating" and have a "consequential impact on the claimant's very ability to pursue redress and attend to the filing of a claim." D.D., 213 N.J. at 149-50; see also Mendez, 416 N.J. Super. at 533 (noting that "extraordinary circumstances can be found based on the severity of a party's injuries"). The question for the judge is whether, when viewed objectively, a severe or debilitating injury impaired the plaintiff's ability to act during the relevant ninety-day period. Id. at 151. Credibility issues warrant a hearing so that the

trial judge can make findings of fact. Where there is a material factual dispute as to whether a medical condition was severe enough to impact significantly a plaintiff's ability to pursue legal action during the ninety-day period following the accrual date, the judge should conduct an evidentiary hearing.

In Maher v. Cty. of Mercer, 384 N.J. Super. 182, 189 (App. Div. 2006), we found that the "circumstances that led to the delay in filing the notice and the motion were truly extraordinary." The plaintiff was hospitalized after receiving a burn, which then caused septic shock, a staph infection, pneumonia, respiratory failure, and memory loss. Id. at 184-85. The plaintiff was placed in an induced coma during her first hospitalization, because she was not expected to live, remained in "extremely poor health," and had repeated admissions to the hospital within the ninety-day period. Id. at 189-90.

In R.L., the plaintiff was a student who had contracted HIV from a sexual relationship with a teacher. 387 N.J. Super. at 334, 341. The delay in filing was due to the plaintiff's psychological trauma, which caused him emotional distress, periods of crying, preoccupation with death, and ultimately a hesitancy to reveal his HIV status. Id. at 341. We held that the plaintiff had established extraordinary circumstances justifying the late filing of a notice of claim against

a school district because of the "stigma [of HIV] recognized by our courts." Ibid.

Not all medical conditions will meet the extraordinary-circumstances standard to justify filing a late tort-claim notice. In D.D., the plaintiff claimed to suffer from shock, stress, anxiety, fatigue, depression, the inability to perform as a public speaker, and overall deterioration of her physical and mental health resulting from the defendant's disclosure of her confidential health information in a press release. 213 N.J. at 137-39. The Court found "there [was] no evidence that these complaints were of sufficient immediate concern to her or were so significant in nature that she sought medical care to address them." Id. at 150. The Court stated the record lacked "evidence . . . that plaintiff was prevented from acting to pursue her complaint or that her ability to do so was in any way impeded by her medical or emotional state." Id. at 151.

In O'Neill v. City of Newark, 304 N.J. Super. at 55, we held that a plaintiff preoccupied with recovery and treatment efforts did not demonstrate sufficiently a showing of extraordinary circumstances to justify a delay in filing a timely notice when he failed to demonstrate that he had lacked the mental capacity to contact an attorney. The plaintiff had a bullet wound to his leg, went to the hospital the day of his injury, lost neurological function to his leg due to nerve

11

damage, had surgery two months after the shooting, was hospitalized for four days, wore a leg brace all day, had to use a portable commode for three months, was confined to his home, and was unable to work for six months. Id. at 546-47. We affirmed the trial court's denial of the plaintiff's motion for leave to file a late tort-claim notice.

The judge erred in finding that plaintiff had established extraordinary circumstances justifying her late tort-claim notice. Neither plaintiff nor the judge cited a case in which a court found that a broken leg constituted extraordinary circumstances. As the judge acknowledged during oral argument, plaintiff provided minimal evidence regarding her situation during the ninety-day period following her fall. All we have are the certifications of plaintiff and her daughter, in which they state that plaintiff was unable to drive, unable to work, and could not complete unidentified "basic tasks of living." They provided no information regarding plaintiff's employment or in what way her injury prevented her from working and do not identify what "basic tasks of living" plaintiff could not complete. Without that information, the judge could not assess properly whether plaintiff's condition and circumstances were so "severe or debilitating" that they had a "consequential impact" on her "ability to pursue redress and attend to the filing of a claim." D.D., 213 N.J. at 149-50.

Like the plaintiff in <u>O'Neill</u>, 304 N.J. Super. at 553, plaintiff had an "obligation to seek legal advice as to [her] remedies, as long as he was physically and psychologically capable." Neither plaintiff nor her daughter assert in their certifications that plaintiff was physically or psychologically incapable of seeking legal advice. They do not claim that plaintiff was in such pain or was so medicated during the ninety-day period that she could not take any action to pursue her claim. Plaintiff's daughter "helped" her. Neither plaintiff nor her daughter explains why her daughter did not or could not help her consult with counsel. Faced with that "somewhat thin" record, instead of denying the motion or scheduling a hearing during which he could have assessed the credibility of plaintiff and her daughter and have explored these issues, the judge gave plaintiff an opportunity to supplement the record. Even with that additional opportunity, plaintiff did not submit any medical or other evidence indicating that she lacked the physical or mental capacity to contact a lawyer. That plaintiff spent those ninety days "concentrat[ing] on her recovery," as the judge found, does not justify her late tort-claim notice. <u>See, e.g.</u>, <u>id.</u> at 554. The judge's inference from the slight record before him that plaintiff was unable to consult with counsel during the ninety-day period after her fall was a leap too far.

Plaintiff's minimal proofs do not rise to the heightened level of extraordinary circumstances.

Even if we were to assume for purposes of this appeal that plaintiff's situation during the ninety days after her fall rendered her unable to pursue her claim, that initial incapacity does not justify her subsequent delay in filing the motion. We know that she was able to take action to pursue her claim when she consulted with an attorney in December 2018.

Plaintiff attempts to explain the five-month delay between her December 2018 consultation and the May 2019 filing of the motion by blaming the lawyer she consulted in December and by asserting that she was not aware of the right to apply for relief from the TCA notice requirement until she met with her current counsel. But a "plaintiff's ignorance of the ninety-day deadline or counsel's inattention or administrative shortcomings do not constitute extraordinary circumstances." Rogers, 208 N.J. at 428; see also D.D., 213 N.J. at 135, 156 (finding that attorney's "inattention," "incompetence," or "ignorance of the law" did not constitute extraordinary circumstances); S.P v. Collier High Sch., 319 N.J. Super. 452, 465-66 (App. Div. 1999) (finding that ignorance of filing requirements not sufficient to establish extraordinary circumstances when nothing in record suggested plaintiff was mentally or physically unable to file

timely notice); Hyman Zamft and Manard, L.L.C. v. Cornell, 309 N.J. Super. 586, 593 (App. Div. 1998) (finding that "ignorance of the law or failure to seek legal advice will not excuse failure to meet the [TCA] filing deadline"); Escalante v. Twp. of Cinnaminson, 283 N.J. Super. 244, 250 (App. Div. 1995) (finding that "[i]gnorance of the [ninety]-day statutory requirement, ignorance of one's rights or mere ambivalence by the claimant have never been found to be sufficient reasons on their own to allow late filing"). Even assuming for purposes of this appeal that the advice plaintiff received in December 2018 was incorrect, that advice does not constitute extraordinary circumstances justifying late submission of a notice of claim. See D.D., 213 N.J. at 157-58 (rejecting argument that attorney malpractice meets "increased threshold of extraordinary circumstances").

Because we conclude that the judge erred in finding that plaintiff had established extraordinary circumstances, we need not reach the issue of whether the judge erred in finding that defendants were not substantially prejudiced by the late filing.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1618-19T2