**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2363-23

HENRY OKIOGAH,

    Plaintiff-Appellant,

v.

NEW JERSEY TRANSIT,
NEW JERSEY DEPARTMENT
OF TRANSPORTATION, and
STATE OF NEW JERSEY,

    Defendants-Respondents,

and

NEW JERSEY TURNPIKE
AUTHORITY, HUDSON
COUNTY, and JERSEY CITY,

    Defendants.

_____

Submitted April 2, 2025 – Decided June 5, 2025

Before Judges Marczyk and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0395-24.

Eichen Crutchlow Zaslow, LLP, attorneys for appellant (Robert J. Banas, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondents (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Handel T. Destinvil, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Henry Okiogah appeals from the trial court's March 20, 2024 order denying his motion with prejudice to file a late notice of claim against defendants New Jersey Transit (NJ Transit), New Jersey Department of Transportation, and the State of New Jersey. Plaintiff challenges the trial court's finding that he did not demonstrate "sufficient reasons constituting extraordinary circumstances" under N.J.S.A. 59:8-9 to excuse his failure to comply with the ninety-day time frame under N.J.S.A. 59:8-8. Based on our review of the record and the applicable legal principles, we affirm.

I.

Plaintiff alleges he was struck by an NJ Transit bus while crossing the street, as a pedestrian, in Jersey City on May 11, 2023.[1] He was transported to

---

[1] Defendants refer to May 5, 2023, as the date of accident presumably because plaintiff's initial motion to file a late notice of claim stated the date of accident was May 5. However, plaintiff's amended motion to file a late notice of claim stated the accident date was May 11. Furthermore, the police report and hospital

Jersey City Medical Center (JCMC) from the scene and hospitalized until May 24, 2023. Plaintiff's chief complaint upon admittance was "pain near his pelvis and down his left leg." Imaging revealed a right frontoparietal subdural hematoma, a frontal extra-axial lesion,[2] acute fractures to the right L5 transverse process and right sacrum, and fractures of the bilateral superior and inferior pubic rami, "minimally displaced on the left, with small amount of surrounding intramuscular hematoma." During his stay at the hospital, plaintiff utilized a rolling walker to assist with ambulation.

Plaintiff was discharged on May 24, 2023, and transferred to Acclaim Rehabilitation & Care Center (Acclaim) to undergo inpatient physical and occupational therapy. Plaintiff was prescribed oxycodone for pain management, was taking propranolol for a traumatic brain injury (TBI), and medication for

records indicate May 11 as the date of accident. Thus, it does not appear the date of accident is in dispute.

[2] There is no suggestion the frontal extra-axial lesion was caused by the accident. Rather the records reflect it is "likely" a meningioma. "A meningioma is a tumor that grows from the membranes that surround the brain and spinal cord, called the meninges." Mayo Clinic, Meningioma, Diseases & Conditions (Mar. 29, 2024), https://www.mayoclinic.org/diseases-conditions/meningioma/symptoms-causes/syc-20355643.

A-2363-23

deep vein thrombosis. Plaintiff attended inpatient occupational and physical therapy five to seven days a week while at Acclaim.

Plaintiff asserted his phone was destroyed in the accident, he lived alone, and had no family who he could contact, "leaving [him] with little ability to seek [legal] counseling until [he] was released." He further claimed his injuries and rehabilitation "prevented [him] from seeking counsel."

Defendants produced a certification from an Acclaim administrator who asserted plaintiff had access to phones, tablets, wi-fi, and internet access, which all patients are informed of upon admission in accordance with standard procedures. Plaintiff was also visited by his girlfriend until he requested, on June 20, 2023, that she no longer be allowed to visit. According to defendants, plaintiff was never noted to have cognitive impairments or emotional distress while at Acclaim. Plaintiff's medical records from Acclaim note he was "[a]wake, alert and oriented."

Plaintiff was discharged on September 13, 2023, more than four months after the accident. The ninety-day time period to file a notice of claim under N.J.S.A. 59:8-8 expired on August 9, 2023. Plaintiff first sought counsel on September 26, 2023. Plaintiff filed his initial motion for leave to file a late notice of claim on October 3, 2023. This application did not contain any medical

4

records. In plaintiff's affidavit in support of his motion, plaintiff did not elaborate on his injuries, other than stating he was struck by a bus, hospitalized for two weeks, and confined to Acclaim for four months. Plaintiff attested his injuries and rehabilitation prevented him from seeking counsel, as he was in Acclaim for the duration of the ninety-day time limit imposed by N.J.S.A. 59:8-8.

The trial court heard oral argument in November 2023, and determined that because the medical records were not provided, the record was incomplete. Accordingly, it denied plaintiff's motion without prejudice and ordered plaintiff to submit the medical records with a renewed motion for leave to file a late notice of claim.

In January 2024, plaintiff filed a renewed motion for leave to file a late notice of claim and attached portions of the medical record. Plaintiff's counsel also submitted a certification of counsel, stating plaintiff "suffered severe and permanent injuries that have affected his physical and mental state."

On March 20, 2024, following oral argument, the trial court entered an order denying plaintiff's motion with prejudice to file a late notice with an accompanying written opinion. It found plaintiff did not meet "the burden of extraordinary circumstances [to] justify [his] delay in filing the notice of claim."

A-2363-23

The court explained plaintiff's "medical records establish[ed] . . . he was physically and mentally capable of contacting an attorney . . . during the ninety days following the accident." The court noted that "[w]hile [p]laintiff may have been in a weakened state during his . . . hospitalization . . . , the records of his subsequent stay at [Acclaim] do not show that he was incapacitated to the point of not being able to seek out an attorney." The court observed the admission notes from Acclaim on May 24, 2023, reflected:

> Plaintiff's cognitive status . . . indicate[d] he was alert, able to answer questions quickly, and his comprehension was quick and oriented. Throughout [p]laintiff's entire stay at [Acclaim], [his] medical records note observations by staff stating that he was "alert, oriented, and verbally responsive" and was not experiencing any acute distress. The medical records show that [p]laintiff was not cognitively impaired to the point of being unable to make a telephone call to an attorney or [to] reach[] out to another individual outside the facility to search for an attorney on his behalf.

The court found plaintiff's argument that he was "isolated" and had no one to contact an attorney unpersuasive. The court reasoned plaintiff's girlfriend had visited multiple times, and when plaintiff requested the visits to stop, it was "still well within the ninety-day period to serve a notice of claim." The court found this established "two important facts[:] First . . . he had a person . . . who could have assisted him" in seeking legal counsel, and second it showed plaintiff

6

"demonstrably had the mental capacity to communicate his needs to the staff." The court also observed a hospital note from the day of his discharge from JCMC, dated May 24, 2023, stating plaintiff would reach out to a friend to let them know he was discharged. The court thus found that "[d]uring his stay at the medical facilities, [p]laintiff had the cognitive ability to reach out to an attorney himself or to ask his friends or girlfriend to reach out on his behalf."

II.

On appeal, plaintiff argues the trial court abused its discretion in denying his application to file a late tort claims notice. He further asserts the court improperly found that his injuries were not sufficiently severe or debilitating to justify the late filing of the notice of claim. He contends the court also improperly relied on plaintiff's ability to utilize friends to assist him in seeking counsel. Lastly, he contends defendants did not suffer any prejudice by the delay in filing a tort claims notice.

"Pursuant to the express terms of the Tort Claims Act, we review a trial court's application of the extraordinary circumstances exception for abuse of discretion." O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 344 (2019); see N.J.S.A. 59:8-9 (leaving it up to "the discretion of a judge of the Superior Court" when determining whether a late notice may be filed). "A court abuses its

discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)). "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

"The New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to :12-3, is the statutory mechanism through which our Legislature effected a waiver of sovereign immunity." D.D. v. Univ. of Med. and Dentistry of N.J., 213 N.J. 130, 133 (2013). "The guiding principle of the Tort Claims Act is that 'immunity from tort liability is the general rule and liability is the exception.'" Coyne v. State, Dep't of Transp., 182 N.J. 481, 488 (2005) (quoting Garrison v. Twp. of Middletown, 154 N.J. 282, 286 (1998)). "Among the most important limitations that the Act imposes on would-be claimants are . . . the statutory provisions that govern a claimant's obligation to file a notice of tort claim as a prerequisite to initiating litigation." D.D., 213 N.J. at 134 (citing N.J.S.A. 59:8-1 to -11).

Under N.J.S.A. 59:8-8:

A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the [ninetieth] day after accrual of the cause of action. . . . The claimant shall be forever barred from recovering against a public entity or public employee if:

   a. The claimant failed to file the claim with the public entity within [ninety] days of accrual of the claim except as otherwise provided in N.J.S.A. 59:8-9.

Under N.J.S.A. 59:8-9:

A claimant who fails to file notice of his claim within [ninety] days . . . may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 . . . .

Thus, "N.J.S.A. 59:8-9 permits a claimant to file an application for leave to serve a late notice of claim on a showing of extraordinary circumstances, so long as the application is filed within one year of the accrual of the claim and the public entity has not been substantially prejudiced . . . ." O'Donnell, 236 N.J. at 346.

A-2363-23

> Generally, we examine "more carefully cases in which permission to file a late claim has been denied than those in which it has been granted, to the end that wherever possible cases may be heard on their merits, and any doubts which may exist should be resolved in favor of the application."
>
> [Lowe v. Zarghami, 158 N.J. 606, 629 (1999) (quoting Feinberg v. State, Dep't of Env't Prot., 137 N.J. 126, 135 (1994)).]

"However, the Legislature left . . . 'extraordinary circumstances' undefined." O'Donnell, 236 N.J. at 346. Thus, a determination of what constitutes "extraordinary circumstances" is determined "on a case-by-case basis," Rogers v. Cape May County Office of Public Defender, 208 N.J. 414, 428 (2011), "with the outcome of each case depending 'on the facts presented,'" O'Donnell, 236 N.J. at 347 (quoting Ventola v. N.J. Veterans Mem'l Home, 164 N.J. 74, 77 (2000)). This court "has generally concluded that medical conditions meet the extraordinary circumstances standard if they are severe or debilitating." D.D., 213 N.J. at 149 (citing Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 533 (App. Div. 2010); R.L. v. State-Operated Sch. Dist., 387 N.J. Super. 331, 341 (App. Div. 2006); Maher v. Cnty. of Mercer, 384 N.J. Super. 182, 189-90 (App. Div. 2006)).

Plaintiff relies on R.L., Maher, Mendez, and Jeffrey,[3] contending his injuries were significant and that obtaining legal counsel "was not among his most pressing concerns during these emotionally difficult times." Plaintiff argues the trial court failed to "fairly evaluate the totality of the circumstances" and improperly relied on medical records from Acclaim deeming him not cognitively impaired, alert, oriented, and verbally responsive, to determine he could have made a phone call to an attorney or a friend. Plaintiff also asserts it was "immaterial" that he had the ability to communicate with an attorney and the court should only examine the seriousness of his medical condition.

Defendants counter plaintiff "did not submit any objective medical proofs describing any debilitating emotional distress or cognitive impairments resulting from" the accident and is raising this issue for the first time on appeal.[4] Defendants assert plaintiff's case is more like D.D. and O'Neill v. City of

---

[3] Jeffrey v. State, 468 N.J. Super. 52 (App. Div. 2021).

[4] Defendants rely on this court's decision in Baldyga v. Oldman, to assert Rule 1:6-6 is meant "to eliminate the presentation of facts which are not of record by unsworn statement of counsel made in briefs and oral arguments." 261 N.J. Super. 259, 265 (App. Div. 1993). Defendants assert plaintiff's counsel's argument on appeal regarding plaintiff's emotional state is not supported by citation to the medical records or to plaintiff's affidavit, and "conjecture from counsel does not constitute admissible evidence." Defendants correctly point out plaintiff's affidavit does not claim any emotional distress.

Newark, 304 N.J. Super. 543 (App. Div. 1997), where the plaintiffs' broad allegations of emotional strain did not suffice to meet the extraordinary circumstances standard. Defendants note, in O'Neill, this court found that although the "plaintiff was justifiably preoccupied" with recovering from his injuries, such reasons are "insufficient . . . to support a finding of extraordinary circumstances without an expert opinion that plaintiff was incapable of contacting an attorney." 304 N.J. Super. at 554.

In R.L., the plaintiff was diagnosed with HIV stemming from a sexual relationship with his school's band director. 387 N.J. Super. at 334. The plaintiff asserted he was "'very distressed' . . . . cried every day and rarely left his home," feeling "like he was going to have a nervous breakdown." Id. at 336. This court found the plaintiff "spent his time crying, preoccupied with thoughts of death." Id. at 341. Although "similar reasons, when offered individually," would be "inadequate" to establish extraordinary circumstances, this court "consider[ed] the collective impact of the circumstances" and found "the combined reasons for delay" established extraordinary circumstances. Ibid.

In Maher, we found extraordinary circumstances where the plaintiff's "condition was so severe that during her first hospitalization she was in an induced coma" and "not even expected to survive." 384 N.J. Super. at 189-90.

The plaintiff subsequently "continued to be in extremely poor heath and . . . was repeatedly readmitted to the hospital for further treatment." Id. at 190.

In Mendez, the plaintiffs were in a car accident, and "when the police arrived at the scene, both [the] plaintiffs were unconscious, having suffered severe head trauma," and "spent considerable time in hospitals and rehabilitation facilities and they had no recollection of events occurring immediately before or after the collision." 416 N.J. Super. at 530. In concluding extraordinary circumstances existed to justify the late filing, this court found "[a]nalogous to Maher, both . . . [of the plaintiffs] were hospitalized for a number of weeks and continued, at the time of the motion, to suffer memory deficits." Id. at 533.

In Jeffrey, the plaintiff was in a motorcycle accident and suffered a "complete spinal cord transection . . . resulting in complete quadriplegia." 468 N.J. Super. at 54. The trial court found extraordinary circumstances did not exist, and we reversed, finding the trial court abused its discretion in failing "to duly appreciate the magnitude of [the] plaintiff's injuries and their life-altering ramifications." Id. at 55. The plaintiff was injured in the accident on April 9 and taken to the hospital. Ibid. Subsequently, he was released on April 17 and transferred to an inpatient rehabilitation therapy center for two months. Id. at 56. He received outpatient therapy for an additional four months. Ibid. The

trial court had reasoned there was nothing to indicate the plaintiff was prevented

from utilizing a family member or friend to contact an attorney.  Id. at 57.

This court found the trial court "grossly misapprehended the magnitude of

[the] plaintiff's injuries" because,"[i]n one catastrophic event, [the plaintiff] lost

complete movement and sensation of his body."  Ibid.  We noted:

> After completing two months of inpatient
> rehabilitation, a judge does not require psychiatric
> testimony to infer that [the] plaintiff's emotional state
> was . . . extremely delicate and highly fragile.  It would
> thus be beyond insensitive to impose a duty on [the]
> plaintiff to seek legal advice through surrogates
> composed of family members or friends, during this
> life-altering adjustment period.
>
> [Id. at 58.]

We further observed:

> We do not require an explicit detailed account of the
> emotional and psychological trauma [the] plaintiff
> endured during this time period.  It is self-evident that
> seeking an attorney to investigate the legal intricacies
> of a potential lawsuit was not among [the] plaintiff's
> most pressing concerns during [such] emotionally
> difficult times.
>
> . . . [The] plaintiff was required to confront and
> adjust to the physical limitations associated with living
> as a quadriplegic. . . .   [T]he inherent difficulties
> associated with this new reality cannot be viewed as a
> barrier to deny [the] plaintiff access to our civil courts.
>
> [Id. at 58-59.]

14

Extraordinary circumstances are less likely to be found when a plaintiff's injury is not severe or debilitating. In D.D., the defendants issued a press release revealing the plaintiff's private and confidential health information. 213 N.J. at 135. In support of her motion to file a late notice of claim, the plaintiff explained she was "in absolute shock" and "began exhibiting medical symptoms as a result of increased stress and anxiety." Id. at 137. The plaintiff explained she was primarily concerned with her medical conditions, not commencing litigation; however, she "provided no documentary evidence to support the statements in her certification." Id. at 138. The plaintiff also submitted a doctor's note created nearly a month after she filed her motion, which stated her medical conditions had worsened as a result of anxiety and stress and could be resolved completely if her stress was reduced. Id. at 139.

The Court found the plaintiff's case was not like that in Mendez, Maher, or R.L., where "medical conditions [met] the extraordinary circumstances standard [because] they [were] severe or debilitating." Id. at 149-50. Rather, the

> plaintiff's asserted medical and emotional conditions
> [we]re not severe, debilitating, or uncommon; for the
> most part, they [we]re vaguely described complaints of
> stress and emotional strain that would quite ordinarily

follow from learning that one's personal information had found its way to the internet.

Apart from [the] plaintiff's assertions that she was in "absolute shock," depressed, stressed and anxious, there [wa]s no evidence that these complaints were of sufficient immediate concern to her or were so significant in nature that she sought medical care to address them.

[Id. at 150.]

The Court found the doctor's "note, although listing a variety of medical complaints . . . did not attest to their severity, but instead offered the doctor's opinion that all of them were transitory conditions . . . expected to resolve completely." Id. at 151. The Court stressed the extraordinary circumstances analysis must focus on "evidence that relates to [a] plaintiff's circumstances as they were during the ninety-day time period." Ibid. Thus, "[a]part from the fact that [the plaintiff's] certification [wa]s vague about the timing of her medical and emotional complaints, the doctor's note [wa]s not tied to the relevant time frame." Ibid. There was also no evidence to show that the "plaintiff was prevented to acting to pursue her complaint or that her ability to do so was in any way impeded by her medical or emotional state." Ibid. Rather, "the record demonstrate[d] that [the] plaintiff not only was able to pursue her complaint but was diligent in her efforts," as she reached out to an attorney within the ninety-

16

day limitation, but the attorney failed to file a timely notice of claim.  Ibid.  Thus, the "plaintiff's medical and emotional state [did not rise] to the level needed to meet the statutory threshold of extraordinary circumstances."  Id. at 152.

In O'Neill, the plaintiff police officer was shot in the leg while on duty on August 3, 1995.  304 N.J. Super. at 546.  He was brought to the hospital and "discharged within hours."  Ibid.  He subsequently visited with other physicians and underwent surgery requiring hospitalization for one week, all within the ninety-day limit.  Id. at 547.  The plaintiff "was confined to his home until January 1996, with the exception of visits for medical treatment."  Ibid.  The plaintiff first contacted an attorney on January 15, 1996, and submitted his motion to file a late claim on June 18, 1996.  Id. at 548-49.

This court upheld the trial court's finding that extraordinary circumstances did not exist.  Id. at 550.  In doing so, this court found although the "plaintiff had a serious injury that limited to some extent his mobility and curtailed his activities," his "only in-patient hospital confinement" was for a week during his surgery.  Id. at 551.  The plaintiff "returned home following the confinement and was able to travel to and from his surgeon's office for follow-up care. Moreover, there [was] an absence of medical evidence in the record that [the] plaintiff was unable to leave home."  Id. at 552.  This court found the plaintiff

had an "obligation to seek legal advice . . . as long as he was physically and psychologically capable." Id. at 553.

This court was "convinced . . . [the plaintiff's] physical incapacitation and confinement to his home" did not prevent him from obtaining legal representation. Ibid. He "was able to leave his home, as evidenced by his trips to various doctors," and the "obvious inference [wa]s, . . . that [the] plaintiff could have made a trip to an attorney's office or, at least, called one on the telephone, especially since his own certification [did] not state any facts to the contrary." Id. at 554. Although this court "appreciate[d] that [the] plaintiff was justifiably preoccupied with" medical treatment "after the accident, rather than with filing a lawsuit," we found it an "insufficient reason to support a finding of extraordinary circumstances without an expert opinion that [the] plaintiff was incapable of contacting an attorney as any such inability [was] less than obvious." Ibid.

Plaintiff's injuries here do not rise to the level of those cases where our courts have found extraordinary circumstances. As the trial court found, plaintiff's injuries were not severe, debilitating, or uncommon. Unlike the cases where we have found extraordinary circumstances to excuse the late filing of tort claims notices, plaintiff was not paralyzed, in a coma, or preoccupied with

18

thoughts of death. See Jeffrey, 468 N.J. Super. at 54; Mendez, 416 N.J. Super. at 530; Maher, 384 N.J. Super. at 189-90. There is no suggestion in the record or from any expert that plaintiff was so debilitated, either physically or cognitively, that he was unable to communicate with counsel. Indeed, the trial court noted he was alert, awake, and oriented during his time at Acclaim.

We recognize the court must consider the totality of the circumstances to determine if plaintiff satisfies the extraordinary circumstances standard to excuse the late filing of a tort claims notice. We conclude the court did consider the full context of plaintiff's situation including his physical condition, coupled with the evidence in the record that he was not cognitively impaired and was alert and oriented during his stay. We do not agree with the trial court's suggestion that plaintiff could, or should, have relied on friends to assist him with contacting counsel, because as we noted in Jeffrey, a plaintiff is not required to rely on or "seek legal advice through surrogates composed of family members or friends." 468 N.J. Super. at 58. However, the court did not base its decision on this issue, but rather separately determined plaintiff himself was capable of contacting an attorney despite being in a rehabilitation facility for several months.

We do not mean to diminish the nature of plaintiff's injuries, but he did not suffer catastrophic injuries like the plaintiff in Jeffrey. Moreover, plaintiff did not dispute the court's findings that he was "alert, able to answer questions quickly, and [that] his comprehension was quick and oriented." Plaintiff was not so limited by any cognitive or physical impairments that he was unable to seek legal advice to explore the possible liability of defendants. Although plaintiff's counsel asserts plaintiff was suffering from emotional difficulties, this was not raised by way of a certification from plaintiff before the trial court and is not supported by any medical or expert reports.

While plaintiff was receiving medication for a TBI, there is no indication in the medical records or plaintiff's certification that he suffered from any cognitive issues that would have impaired his ability to communicate with counsel. Although plaintiff alleged that he was focused on his rehabilitation for his injuries as part of the reasons he did not communicate with counsel, the court found that this did not rise to the level of extraordinary circumstances under N.J.S.A. 59:8-9. Similar to D.D., there is no evidence that plaintiff was prevented from acting to pursue his legal action or that his ability to do so was impeded by his medical or emotional state. 213 N.J. at 151.

Contrary to plaintiff's arguments, it is not "immaterial" that he had the ability to communicate with counsel. The ability to contact counsel is certainly a relevant consideration, although we agree it is not itself dispositive. Regardless, the court here did not solely rely on plaintiff's ability to have contacted an attorney during his stay at Acclaim. Rather, while the court noted plaintiff was capable of communicating with counsel, it also focused on the nature of his injuries, concluding they were not so severe or disabling as to constitute extraordinary circumstances to excuse the late filing of a tort claims notice.

We conclude the court did not misapply its discretion in finding plaintiff failed to establish extraordinary circumstances such that it impacted his ability to attend to his legal issues. Because we conclude the court did not misapply its discretion in finding plaintiff failed to demonstrate extraordinary circumstances, we need not address whether defendants were "substantially prejudiced" under N.J.S.A. 59:8-9.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hartley

Clerk of the Appellate Division